STEVEN T. GUBNER - Bar No. 156593
SUSAN K. SEFLIN - Bar No. 213865
JERROLD L. BREGMAN - Bar No. 149896
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile:  (818) 827-9099
Email:      sgubner@ebg-law.com
            sseflin@ebg-law.com
            jbregman@ebg-law.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| In re:<br><br>DigitalSound Production Services, Inc.,<br><br>Debtor. | Case No. 1:15-bk-13952-MB<br>Chapter 11<br><br>**DECLARATION OF CHARLES G. KLAUS IN SUPPORT OF:**<br><br>**(1)  EMERGENCY MOTION FOR (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF THE DEBTOR'S ASSETS, (B) SCHEDULING HEARING TO CONSIDER THE SALE, AND (C) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER AUTHORIZING AND APPROVING (A) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES [DOC. #2];**<br><br>**(2) EMERGENCY MOTION FOR ORDERS:  (A) AUTHORIZING THE DEBTOR TO BORROW MONEY SECURED BY ESTATE PROPERTY; (B) AUTHORIZING USE OF CASH COLLATERAL; (C) GRANTING ADEQUATE PROTECTION FOR USE OF PREPETITION COLLATERAL; AND (D) GRANTING RELATED RELIEF [DOC. #3]**<br><br>**(3)  EMERGENCY MOTION OF DEBTOR FOR ENTRY OF AN ORDER (1) AUTHORIZING DEBTOR TO PAY PREPETITION (A) WAGES, SALARIES, AND OTHER COMPENSATION, (B) EMPLOYEE MEDICAL, WORKERS' COMPENSATION AND SIMILAR BENEFITS, AND (C) REIMBURSABLE EMPLOYEE EXPENSES; ETC. [DOC. #4]**<br><br>**<u>Hearing:</u>**<br>**Date:**    December 2,  2015<br>**Time:**    3:30 p.m.<br>**Place:**   Courtroom 303<br>            21041 Burbank Blvd.<br>            Woodland Hills, CA 91367 |

I, Charles G. Klaus, declare:

1.      I am an individual over the age of eighteen years, and have served as the Chief Executive Officer, President and sole director of DigitalSound Production Services, Inc., the chapter 11 debtor and debtor in possession herein (the "Debtor"), since July 31, 2015.  The facts contained herein are based upon my personal knowledge or based upon the documents I review in the regular course of my duties as CEO and President and, if called as a witness, I would and could competently testify thereto.  Except as otherwise indicated, all facts set forth in this Declaration are based upon: (a) my personal knowledge; (b) my personal review of the relevant documents; (c) my judgment as informed by my professional expertise, experience and knowledge of the Debtors' operations; and (d) information learned from my review of relevant documentation and information supplied to me by members of the Debtor's management team, including its consultants and advisors.

2.      I am over 18 years of age.  If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

3.      On November 30, 2015 ("Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in the Debtor's chapter 11 case.

4.      I submit this Declaration in support of the relief the Debtor is requesting in connection with its bankruptcy filing, including the "first day" relief the Debtor has requested by the following motions which were filed on the Petition Date:

A.      *Emergency Motion for (I) an Order (A) Approving Bidding Procedures in Connection with Sale of the Debtor's Assets, (B) Scheduling Hearing to Consider the Sale, and (C) Approving Form and Manner of Notice Thereof; and (II) an Order Authorizing and Approving (A) the Sale of Substantially All of the Debtor's Assets and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; Memorandum of Points and Authorities in Support Thereof* [Doc. #2] (the "Bid Procedures Motion");

B.      *Debtor's Emergency Motion For Entry of Interim and Final Orders: (A) Authorizing the Debtor to Borrow Money Secured by Property of the Estate Pursuant to 11 U.S.C. §§ 364(c)(1) & (2) and 364(d); (B) Authorizing Use of Cash Collateral; (C) Granting Adequate Protection for Use of Prepetition Collateral; and (D) Granting Related Relief* [Doc. #3] (the "DIP Financing Motion"); and

C.      *Debtor's Emergency Motion for an Order (1) Authorizing, but not Requiring,*

*Debtor to Pay Prepetition (A) Wages, Salaries, and Other Compensation, (B) Employee Medical, Workers' Compensation and Similar Benefits, and (C) Reimbursable Employee Expenses; and (2) Authorizing and Directing Applicable Banks and Other Financial Institutions To Receive, Process, Honor, and Pay Checks Presented For Payment and to Honor Fund Transfer Requests* [Doc. #4] (the "Wage Motion").

5.    I have read each of the Bid Procedures Motion, DIP Financing Motion, and the Wage Motion (collectively, the "First Day Motions"). All initial capitalized terms used by not defined herein shall have the same meanings ascribed to them in the respective First Day Motions. The allegations of fact contained in each of the First Day Motions is true and correct.

**A.    Need For Emergency Relief**

6.    Emergency relief is required because the Debtor is operating at a loss of at least $100,000 *per week* from its operations, and more during the upcoming holiday months when bookings are down and accounts receivable fall (which the Debtor currently is experiencing). The relief requested by the First Day Motions is necessary to enable the Debtor to remain in business through the closing of the sale of the Acquired Assets, anticipated to close by January 4, 2016 if not sooner. Absent remaining in business, the Debtor's assets would be expected to be sold on a liquidation valuation basis which is anticipated to be substantially less than the amount required to satisfy claims in full. In order to enable the Debtor to operate its business to avoid immediate and irreparable harm and to fund operations (including payroll) pending further hearings, the Debtor is requesting by the First Day Motions that the Court grant the relief requested thereby.

**B.    General Background**

7.    Formed in 2006 as a California limited liability company and converted to a California corporation in 2011, the Debtor provides full-service entertainment production services with premium quality lighting, sound, video, staging equipment and/or other video and sound solutions for a wide variety of events and productions. The Debtor primarily rents large-scale equipment to customers planning events in the following segments: cinema, concert and other tours, commercial, corporate and worship. A portion of the Debtor's business involves the sale of incidentals and consumables that are required for the effective use of the rented equipment. The Debtor also occasionally sells large equipment to customers.

8.      The Debtor's principal place of business is located at 12950 Pierce Street, Pacoima, California 91331.  The Debtor's website is www.dpsinc.com.

9.      While the Debtor was converted from a California limited liability company to a California corporation in 2011, the Debtor has not historically followed corporate formalities.  While it appears that Anthony Dever ("Dever") is the fifty-one percent (51%) shareholder and Alex Alvord ("Alvord") is the forty-nine percent (49%) shareholder, the Debtor's books and records contain signed stock certificates for only Alvord's shares.  The Debtor does not have any subsidiaries.  The Debtor owns a 12% interest in Cineo Lighting LLC, a California limited liability company.  The Debtor does not manage Cineo Lighting LLC, and Cineo Lighting LLC is not an "insider" of the Debtor.

10.     Dever originally founded the Debtor as a limited liability company in 2006 and was its sole member and shareholder until approximately 2011.  In 2011, Dever converted the Debtor to a California corporation in order to facilitate an equity investment in the Debtor by Alvord.  In 2011, Alvord made his initial equity investments in the Debtor in the amount of approximately $4.1 million, and acquired his forty-nine percent (49%) ownership interest at that time.  No other transfers of the Debtor's stock are reflected in the Debtor's books and records.

11.     Since its conversion to a corporation in 2011, the Debtor's operations have been funded by Alvord, but the company has been operating at a loss since then.  For example, the average monthly burn rate (expenses above operating income) was approximately $592,000 (per month) for the first nine months of 2015.  Since then, the Debtor has taken drastic measures, including three rounds of employee terminations and a termination of its lease in its former location in Burbank, California, which have resulted in a reduced burn rate of approximately $400,000 per month.

12.     Presently, the Debtor employs about 30 people, including 28 full-time employees and two independent contractors.  In addition, presently the Debtor has approximately eight freelance employees who assist the Debtor on a project by project basis.  The number of freelancers the Debtor employees varies greatly on a month to month basis.

13.     In June 2015, a dispute arose between Alvord and Dever resulting in the filing of a

1  lawsuit by Alvord filed against the Debtor and Dever in Superior Court, Orange County (Case No.

2  30-2015-00801037).  Pursuant to a stipulated order entered on September 2, 2015, the parties agreed

3  to the terms set forth in a Term Sheet entered into by the parties on July 30, 2015 (the "Term

4  Sheet").  Pursuant to the Term Sheet, Dever resigned from all of his positions with the Debtor.  Prior

5  to that, Dever served as the sole director and as the Chief Executive Officer, Secretary and Chief

6  Financial Officer of the Debtor, according to the Statements of Information the Debtor filed with the

7  California Secretary of State on January 23, 2014 and February 3, 2015.

8       14.   As set forth in the Term Sheet and as consented to by both shareholders, I was

9  appointed as a provisional director and sole responsible officer for the Debtor, and I have served as

10  the sole director and executive officer of the company since then.  All executive business and

11  operations decisions have been made from the time since my appointment by me in consultation

12  with the Debtor's corporate counsel, Encore Law Group, that was engaged in April 2015, and

13  proposed bankruptcy counsel, Ezra Brutzkus Gubner LLP.

14  **C.    Bidding Procedures Motion**

15       15.   Lacking the financial means to continue to operate its business with operating

16  deficits, and in light of its perceived future business prospects, the Debtor evaluated strategies to

17  maximize the value of its enterprise for the benefit of creditors.  In consultation with the Debtor's

18  management and advisors, I determined in the exercise of my business judgment that the optimal

19  route to maximize the value of the Debtor's enterprise for the benefit of creditors is to sell

20  substantially all of the Debtors assets at their going-concern valuation.  To that end, the Debtor

21  shopped itself and learned that, in light of the litigation between the owners of this closely held

22  company, and other factors, a free and clear sale under section 363 of the Bankruptcy Code was

23  necessary to provide any prospect of receiving a purchase price for the Acquired Assets that is

24  expected to be sufficient to satisfy in full all claims against the Debtor's estate.  The Debtor's

25  marketing process pre-petition (described in further detail below) led to its agreement with the

26  Stalking Horse Purchaser to buy substantially all of the Debtor's assets, subject to higher and better

27  offers at auction under the auspices of the Bankruptcy Court.  This agreement is reflected in the

28  Stalking Horse APA (as defined in the Bid Procedures Motion).

16.     The terms of the proposed sale of substantially all of the Debtor's assets (the "Acquired Assets") to Atomic Lighting LLC (the "Stalking Horse Purchaser"), as specified in that certain Asset Purchase Agreement between the Debtor and the Stalking Horse Purchaser, dated as of November 30, 2015 (and as may be further amended or modified, the "Stalking Horse APA"), includes consideration valued at $5,975,242, inclusive of $4,095,000 of cash plus $1,880,242 of assumed obligations (the "Assumed Obligations"), which terms are subject to overbid at an Auction, as explained in further detail in the Bid Procedures Motion.

17.     If implemented as envisioned, the Debtor is optimistic that the proceeds of the contemplated sale, after anticipated costs, is likely to yield sufficient proceeds to enable the Debtor to satisfy all of its debts in full.  Thereafter, there would be no benefit of which I am aware from remaining in bankruptcy, and the Debtor would seek a structured dismissal of the bankruptcy case at that time.  Moreover, the sale of the Acquired Assets, as contemplated by the Stalking Horse APA, will enhance the prospects of future employment opportunities for many if not all of the Debtor's Employees.

18.     Under my supervision, the Debtor conducted vigorous and robust activities before the Petition Date to market and sell the Debtor and its assets.  These efforts were focused largely on industry participants, including strategic and financial investors, within the Debtor's relatively small business segment, where I understand news of the Debtor's sales process has been spread widely to potential bidders.  Specifically, among other things, the Debtor retained Tom Sorce, a 30-year industry veteran, to act as a business broker on a consultancy basis to help facilitate the sale of DPS's assets, on terms including $500 per week plus a commission equal to 1.5% of the value to be received upon the closing of a sale.  The Debtor also retained the services of an advertising agency, SRI Advertising, to assist the Debtor in placing media advertising and purchasing mailing lists of companies in the same industry as DPS for targeted marketing initiatives.  These marketing efforts included sending approximately 19,000 emails to industry participants on September 8, 2015, an additional approximately 56,500 emails on September 15, 2015, and an additional approximately 13,000 emails to industry participants on September 22, 2015.  The Debtor also ran an ad in the Los

Angeles Times. The Debtor also mailed solicitations of interest postcards to more than 5,000 participants in the motion and video production industry, and built and populated a secure online data room containing key documents and financial information about the Debtor and the Acquired Assets ("Data Room") to facilitate the due diligence by interested parties. This process resulted in approximately 22 parties requesting information and being sent a non-disclosure agreement ("NDA") of whom approximately nine (9) executed and returned the NDA and were granted access to the Data Room. Of these, the Debtor received two non-binding offers in the form of letters of interest which we negotiated, one of which was from the Stalking Horse Purchaser and led to the Stalking Horse APA, plus the Debtor has received two additional expressions of interest from potential bidders regarding their interest in possibly participating in an Auction (as defined in the Bid Procedures Motion).

19.    Accordingly, the Debtor's extensive prepetition sale process included substantial negotiations with several different prospective purchasers, resulting ultimately in the negotiation of and entry into the Stalking Horse APA. The Stalking Horse APA preserves the opportunity for other potential bidders to make an overbid to purchase the Acquired Assets on higher and better terms than those specified in the Stalking Horse APA. If the requested notice periods were not shortened, the Debtor's ability to effect a sale of the Acquired Assets in a transaction likely to maximize their value, and yield sufficient net proceeds to satisfy in full the claims against the Debtor's estate, would be materially and adversely affected, and irreparably harmed.

**D.    DIP Financing Motion**

20.    On or about August 25, 2015, the Debtor entered into a Secured Promissory Note (the "Note") with Alvord pursuant to which the Debtor obtained a revolving line of credit of up to $2.5 million, payable in monthly installments of interest only, which interest is fixed at three percent (3%) per annum, no prepayment penalty, with repayment due by December 31, 2016. As of the Petition Date, the Debtor has borrowed $2.5 of the $2.5 million. The Debtor and Alvord have

agreed to increase the amount of the Note to $2.8 million in order to provide the Debtor with

sufficient financing to consummate the sale of its business and for a structured dismissal of this case

upon which the Debtor intends to pay all creditors in full.  Attached hereto as **Exhibit A** is the

Debtor's budget projections ("Projections").  The DIP Financing Motion requests authority to incur

financing and use cash collateral in accordance with the Projections, including authority for the

Debtor to deviate from the total expenses contained in the Projections by no more than 20% on a

cumulative basis and to deviate by categories (without the need for further Court order).  The Note is

secured by a duly recorded "blanket" Security Agreement, dated August 25, 2015 (the "Security

Agreement"), covering and encumbering all of the Debtor's assets.

21.    Attached hereto are true and correct copies of the DIP Financing documents, which

consist of that certain Secured Promissory Note, between the Debtor as borrower and Alvord as

lender, dated August 25, 2015 (**Exhibit B**), and that certain Security Agreement between the parties,

of the same date (**Exhibit C**).

22.    Aside from the Debtor's obligations to the secured lender as described above, the

Debtor's assets are encumbered by a lien in favor of Wells Fargo on a certain used forklift, a lien in

favor of Raymond Leasing Corp. on certain material handling equipment such as order pickers and

lift trucks and similar equipment, and a lien in favor of Arts & Commerce Productions on certain

lenses, power supplies, and other similar equipment.  Additionally, the Debtor has approximately

$650,000 in general unsecured debt plus obligations under certain leases and employee contracts.

Attached hereto **Exhibit D** is a true and complete copy of the UCC Search Report prepared for the

Debtor by First Corporate Solutions and dated November 5, 2015.

23.    The Debtor is operating at a substantial negative loss and does not have the funding to

continue its operations, to get to the contemplated sale under the Stalking Horse APA, without the

relief requested in the First Day Motions.  The Debtor received $350,000 on the Petition Date from

Alvord.  Without that additional $350,000, the Debtor would have only had available cash to last

through the second week of December 2015.  According to the current projections, the Debtor will

run out of cash by the first or second week of January.   Without approval of cash collateral and

without the requested funding, the Debtor will not be able to remain in business, to pay its necessary

operating expenses, and its opportunity to maximize the value of its assets to pay satisfy in full all creditors' claims, will be materially and adversely affected resulting in irreparable harm to the Debtor's estate.

**C.      Employee Wage Motion**

24.      In the ordinary course of its business, the Debtor deducts from its employees' paychecks (as applicable): (a) payroll taxes and the employees' portion of FICA and unemployment taxes, (b) employee contributions for health and disability related benefits, (c) employee contributions to 401(k) plans, and (e) other miscellaneous items (collectively, "Employee Deductions"). The Debtor forwards amounts equal to the Employee Deductions from its operating accounts to its third-party payroll administrator.

25.      Debtor's next payroll is payable to the Employees on December 4, 2015, and relates to the period for November 16, 2015 through November 27, 2015 ("December 4 Pay Period"). The December 4 Pay Period will include prepetition wages for the period between November 16, 2015 and November 29, 2015. Typically, as for the payroll due this coming Friday, December 4, 2015, the Debtor will submit its payroll forms to its third-party payroll administrator three or four days before the payroll date, and the Debtor will then fund the payroll amount, inclusive of the amounts associated with the Employee Deductions, by transferring the required funds therefor from the Debtor's account to the third-party payroll administrator by two days (or one day at the latest) before the payroll pay date, i.e., the Debtor would transfer the amounts to fund payroll and Employee Deductions by Wednesday evening or Thursday morning before a payroll on Friday.

26.      The payroll amount, including Employee Deductions, associated with this prepetition period for the December 4 Pay Period, is expected to be in the aggregate amount of approximately $97,401 ("Prepetition Wages") as explained in more detail in the Employee Wage Motion. There are 28 employees, two sub-contractors, and eight freelancers who earned Prepetition Wages. One insider, Gregory Schroeder, earned wages during period the period from and including November 16 through and including November 29, 2015, in the amount of $7,841.14; however, those earnings are not included in the Prepetition Wages.

27.      The Debtor intends to close its pre-petition bank account(s) from which payroll

amounts are funded, as soon as such payroll funding is completed.

28. Attached hereto as **Exhibit E** is a true and correct copy of a spreadsheet reflecting Prepetition Wages and Employee Deductions for the fourteen-day payroll period November 16, 2015 through November 29, 2015.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on November 30, 2015 at Pacoima, California.

Charles G. Klaus

| | DECEMBER | | | | | TOTAL |
| | Weeks | | | | | |
| | 30-Nov | 7-Dec | 14-Dec | 21-Dec | 28-Dec | MONTH |
|---|---|---|---|---|---|---|
| **Cash Beginning Balance** | **745,677** | **577,657** | **495,558** | **268,193** | **224,693** | **745,677** |
| **1.  Cash Receipts** | | | | | | |
| Projected Cash Reciepts | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 100,000 |
| Funding from Investor | - | - | - | - | - | - |
| Funding from Investor | - | - | - | - | - | - |
| **Total Cash Receipts** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **100,000** |
| **CASH AVAILABLE FOR OPERATIONS** | **765,677** | **597,657** | **515,558** | **288,193** | **244,693** | **845,677** |
| **2. Cash Disbursements** | | | | | | |
| 2.1 Payroll: | | | | | | |
| Salary (DPS EEs) + Burden | 107,690 | - | 104,934 | - | 104,934 | 317,557 |
| Direct Labor (Freelancers) | 10,000 | - | 10,000 | - | 10,000 | 30,000 |
| CEO | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Sub-Contractor (B. Finley) | - | - | 4,615 | - | 4,615 | 9,231 |
| Benefits | 2,300 | - | 2,300 | - | 2,300 | 6,900 |
| Company Matching-Simple IRA | 4,000 | - | 4,000 | - | 4,000 | 12,000 |
| 2.2 AP Payments  _(81 vendors)_ | - | - | - | - | - | - |
| Marketing _(i.e., release contract)_ | - | - | - | - | - | - |
| Sub-Rentals _(Over 90 days)_ | - | - | - | - | - | - |
| IT Services | - | - | - | - | - | - |
| ANC - Payment to release lien | - | - | - | - | - | - |
| Vendor with balances < $2K | - | - | - | - | - | - |
| Capital Expenditures _(none)_ | - | - | - | - | - | - |
| Other | - | - | - | - | - | - |
| 2.3 AMEX/Credit Cards | - | - | - | - | - | - |
| 2.4 Rent Payments | | | | | | |
| Pacoima | 39,428 | - | | - | | 39,428 |
| Pacoima - Landlord Damage Claim | - | - | - | 48,000 | - | 48,000 |
| Burbank - 7643 | - | - | - | - | - | - |
| Burbank - 7691 | - | - | - | - | - | - |
| Burbank - 7691- Landlord Damage Claim | - | - | - | 5,000 | - | 5,000 |
| Burbank - 7691 (Sub-Lease:Deposit Refund) | - | - | - | - | - | - |
| 2.5 Other Leases | 650 | 6,599 | - | - | - | 7,250 |
| 2.6 Utilities/Telephone | - | - | 10,000 | - | - | 10,000 |
| 2.7 Vehicles (gas, leases, etc) | - | - | 4,000 | - | - | 4,000 |
| 2.8 Expense Reimbursements | - | - | - | - | - | - |
| 2.9 Credit Card/Banking Fees | 1,452 | - | 16 | - | - | 1,468 |
| 2.10 Insurance (General/Liab)/Other | - | - | 20,000 | - | - | 20,000 |
| 2.11 Outside Services:** | | | | | | |
| Audit/Accounting/Taxes | 10,000 | 10,000 | - | - | 1,000 | 21,000 |
| Legal - Encore | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Legal - EBG | - | 75,000 | 75,000 | - | - | 150,000 |
| Consulting | - | - | - | - | - | - |
| Consulting - Valuations/Other | - | - | - | - | - | - |
| Consulting - Sales Commission | 500 | 500 | 500 | 500 | 500 | 2,500 |
| 2.12 Other Payroll: | | | | | | |
| Payroll Service | 2,000 | - | 2,000 | - | 2,000 | 6,000 |
| Vacation Payouts | - | - | - | - | - | - |
| 2.13 Debt Service  (3% of $2.5 mm secured debt) | - | - | - | - | - | - |
| - estimated | | | | | | |
| **Total Expected Disbursements** | **188,020** | **102,099** | **247,365** | **63,500** | **139,349** | **740,333** |
| **Available Cash at the Month End** | **577,657** | **495,558** | **268,193** | **224,693** | **105,344** | **105,344** |

_Disclosures:_

   *In the event that the Atomic Lighting sale does not occur, the debtor is requesting authorization to pay two-week severance to all
   terminated employees which is approximatley $104,000. This amount does not include the accrued vacation due to 21 employees upon

   **Professional fees will not be paid without a Bankruptcy Court order but are included for budgeting purposes

**Exh A_001**

| | JANUARY - 2016 | | | | |
| | Weeks | | | | TOTAL |
| | 4-Jan | 11-Jan | 18-Jan | 25-Jan | MONTH |
|---|---|---|---|---|---|
| **Cash Beginning Balance** | 105,344 | 15,313 | (251,635) | (257,651) | 105,344 |
| | | | | | |
| **1. Cash Receipts** | | | | | |
| Projected Cash Reciepts | 25,000 | 25,000 | 25,000 | 25,000 | 100,000 |
| Funding from Investor | - | - | - | - | - |
| Funding from Investor | - | - | - | - | - |
| Total Cash Receipts | 25,000 | 25,000 | 25,000 | 25,000 | 100,000 |
| | | | | | |
| **CASH AVAILABLE FOR OPERATIONS** | 130,344 | 40,313 | (226,635) | (232,651) | 205,344 |
| | | | | | |
| **2. Cash Disbursements** | | | | | |
| 2.1 Payroll: | | | | | |
| Salary (DPS EEs) + Burden | - | 104,934 | - | 104,934 | 209,867 |
| Direct Labor (Freelancers) | - | 30,000 | - | 30,000 | 60,000 |
| CEO | 4,000 | 4,000 | 3,500 | 3,500 | 15,000 |
| Sub-Contractor (B. Finley) | - | 4,615 | - | 4,615 | 9,231 |
| Benefits | - | 2,300 | - | 2,300 | 4,600 |
| Company Matching-Simple IRA | - | 4,000 | - | 4,000 | 8,000 |
| 2.2 AP Payments *(81 vendors)* | - | - | - | - | - |
| Marketing *(i.e., release contract)* | - | - | - | - | - |
| Sub-Rentals *(Over 90 days)* | - | - | - | - | - |
| IT Services | - | - | - | - | - |
| ANC - Payment to release lien | - | - | - | - | - |
| Vendor with balances < $2K | - | - | - | - | - |
| Capital Expenditures *(none)* | - | - | - | - | - |
| Other | - | - | - | - | - |
| 2.3 AMEX/Credit Cards | - | - | - | - | - |
| 2.4 Rent Payments | | | | | |
| Pacoima | 39,428 | - | - | - | 39,428 |
| Pacoima - Landlord Damage Claim | - | - | - | - | - |
| Burbank - 7643 | - | - | - | - | - |
| Burbank - 7691 | - | - | - | - | - |
| Burbank - 7691- Landlord Damage Claim | - | - | - | - | - |
| Burbank - 7691 (Sub-Lease:Deposit Refund) | - | - | - | - | - |
| 2.5 Other Leases | 650 | 6,599 | - | - | 7,250 |
| 2.6 Utilities/Telephone | - | 10,000 | - | - | 10,000 |
| 2.7 Vehicles (gas, leases, etc) | - | 8,000 | - | - | 8,000 |
| 2.8 Expense Reimbursements | | | | | |
| 2.9 Credit Card/Banking Fees | 1,452 | - | 16 | - | 1,468 |
| 2.10 Insurance (General/Liab)/Other | - | 20,000 | - | - | 20,000 |
| 2.11 Outside Services:** | - | | | | - |
| Audit/Accounting/Taxes | 10,000 | - | - | - | 10,000 |
| Legal - Encore | 7,500 | 7,500 | - | - | 15,000 |
| Legal - EBG | 50,000 | - | - | - | 50,000 |
| Consulting | - | - | - | - | - |
| Consulting - Valuations/Other | - | - | - | - | - |
| Consulting - Sales Commission | - | 90,000 | - | - | 90,000 |
| 2.12 Other Payroll: | - | - | - | - | - |
| Payroll Service | 2,000 | - | 2,000 | - | 4,000 |
| Vacation Payouts | - | - | - | 22,756 | 22,756 |
| 2.13 Debt Service (3% of $2.5 mm secured debt) | - | - | 25,500 | - | 25,500 |
| - estimated | | | | | |
| Total Expected Disbursements | 115,031 | 291,948 | 31,016 | 172,105 | 610,099 |
| **Available Cash at the Month End** | 15,313 | (251,635) | (257,651) | (404,756) | (404,756) |

*Disclosures:*

*In the event that the Atomic Lighting sale does not*

*terminated employees which is approximatley $104*

**Professional fees will not be paid without a Bank*

**Exh A_002**

**SECURED PROMISSORY NOTE**
(Revolving)


**THIS AUGUST 25, 2015, FOR VALUE RECEIVED, DIGITALSOUND PRODUCTION SERVICES, INC.,** a California corporation ("Maker"), promises to pay to **Alexander Alvord**, an individual ("Payee"), on the dates, in the manner and at the place hereinafter provided, the principal sum of **Two Million Five Hundred Thousand Dollars ($2,500,000.00)** or so much thereof as disbursed hereunder from time to time, together with interest on the outstanding principal amount thereof from the date of this Secured Promissory Note ("Note"), or, if later, the date of disbursement, as applicable, at the rate of **Three Percent (3%) per annum.**

All computations of interest shall be made on the basis of a 360-day year consisting of twelve thirty-day months. This Note is not subject to offset, decrease, reductions, deductions, or counterclaim of any kind or nature whatsoever. Time is of the essence with respect to all payments and all obligations of Maker.

Subject to the terms and provisions of this Note, and so long as no event of default exists hereunder, Maker may borrow, repay and re-borrow funds from Lender in the aggregate principal amount not to exceed **Two Million Five Hundred Thousand Dollars ($2,500,000.00)** at any one time outstanding, provided that each advance is subject to the approval of Payee, which may be granted or withheld in Payee's sole and absolute discretion. Notwithstanding, Payee hereby agrees to fund the amount required to pay Maker's final payroll obligations, not including any contractual severance obligations. An initial disbursement of Six Hundred Fifty Thousand No/ 100ths Dollars ($650,000.00) has been approved by Payee.

1.    **Payment.** With or without demand this Note shall mature and be payable in full on December 31, 2016. Maker may pay to Payee monthly installments of accrued interest on the first (1st) day of each calendar month during the term of this Note.

2.    **Prepayment**. This Note may be prepaid in whole or part without penalty of any type.

3.    **Security and Collateral**. The payment and performance of this Note is secured by a Security Agreement (the "Security Agreement") of even date herewith which creates a security interest in certain property more particularly described therein (the "Collateral").

4.    **Allocation of Payments**. All payments received by Payee from or for the account of Maker may be applied by Payee, in his sole and absolute discretion, in any manner or order against amounts due hereunder, including the following:

> First:    To pay any and all costs, advances, expenses and fees due, owing and/or payable to Payee, or paid or incurred by Payee, and arising

0189/001/00017854 v.1                                   1
Initials: _ELC_

**Exh B_001**

under this Note or other documents evidencing and securing this Note, but in no event greater than $10,000;

Second:     To pay any and all interest due, owing and/or payable under this Note; and

Third:      To pay outstanding principal under this Note.

5.     **Default**.

(a)     Each of the following shall constitute an "Event of Default" under this Note:

(i)     Maker fails to make any payment of principal or interest when due under the terms of this Note;

(ii)     Any representation, warranty or statement of information provided to Payee by or on behalf of Maker is, or at the time made or furnished was, false in any material respect, to Maker's knowledge; and

(iii)     Failure to materially perform any obligation of Maker set forth in the Security Agreement.

(b)     Upon the occurrence of any Event of Default, Payee may at any time without notice exercise any one or more of the following rights or remedies (in addition to such rights or remedies provided under the Security Agreement and/or applicable law): (i) declare the entire amount of indebtedness under this Note immediately due and payable, and (ii) sell or otherwise dispose of all or a portion of the Collateral as permitted by law, with or without notice, at public or private sale(s), and in such event Maker shall at all times remain liable to Payee for any deficiency existing after any such sale and for the costs, including attorneys' fees, incurred in connection with such sale.

6.     **Late Payments**.  If for any reason Maker fails to make any payment of principal or interest within ten (10) business days after the payment is due hereunder, then such payment shall bear interest at the rate of eight percent (8%) per annum until paid.  Notwithstanding the foregoing or anything herein to the contrary, in no event shall Maker be required to pay interest or other amounts in excess of the maximum amount permitted by applicable law.

7.     **Maker's Waivers**.  Maker, for itself and its successors and assigns, hereby waives presentment, protest, demand, notice of dishonor and of nonpayment, and waives and renounces all rights to the benefits of any statute of limitations and any moratorium or exemption now provided or which may hereafter be provided by any federal or state statute, including, without limitation, exemptions provided or allowed under the Bankruptcy Reform Act of 1984, as amended, both as to itself and as to the Collateral, whether real or personal, concerning the enforcement and collection of the obligations evidenced by this Note and any extensions, renewals and modifications hereof.

Exh B_002

8.     **Applicable Law**. This Note shall be governed by and construed under the laws of the State of California without giving effect to conflicts of laws principles. The parties agree that venue shall be Orange County, California.

9.     **No Waiver**. No failure on the part of Payee to exercise any right or remedy hereunder, whether before or after the happening of an Event of Default, shall constitute a waiver thereof, and no waiver of any past Event of Default shall constitute a waiver of any future Event of Default or of any other default. No acceptance of a past due installment of principal or interest, or indulgence granted from time-to-time, shall be construed to be a waiver of the right to insist upon prompt payment thereafter, or shall be deemed to be novation of this Note or a restatement of the debt evidenced hereby, or be construed so as to preclude the exercise of any right which Payee may have (including the right to declare the outstanding principal amount of this Note, together with accrued interest thereon, immediately due and payable), whether by laws of the state governing this Note, by agreement or otherwise; and Maker hereby expressly waives the benefit of any statute or rule of law or equity which would produce a result contrary to or conflict with the foregoing.

10.    **Costs of Collection**. If any action or proceeding is commenced between the parties hereto with respect to this Note, the prevailing party shall be entitled to all fees and expenses incurred by him or it in connection with such action or proceeding, including reasonable attorneys' fees.

11.    **Acknowledgements**. Maker acknowledges that at no time shall Maker be obligated or required to pay interest at a rate which may subject Payee to either civil or criminal liability as a result of such rate being in excess of the maximum rate permitted by law. If, by the terms of this Note, Maker is at any time required or obligated to pay interest in excess of the maximum rate permitted by law, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of the maximum rate shall be applied and/or retroactively be deemed to have been payments made in reduction of the principal balance. Any such change in the terms of interest under this Note shall not relieve any party from liability with respect to payment or performance of this Note or the other documents evidencing and securing this Note.

12.    **Miscellaneous**. Maker hereby represents to Payee that this transaction is solely for business purposes. Maker further represents to Payee that the terms and conditions of this Note and the transaction contemplated by the parties have been fully explained to Maker, that Maker has consulted (or has had the opportunity to consult) independent legal and tax advice, and that Maker has voluntarily elected to enter into this transaction. This Note shall inure to the benefit of Payee and his successors, heirs and assigns. This Note may be modified only by a written instrument duly executed by each party hereto. Any waiver of any term or condition of this Note shall be effective only if made in writing and only in the specific instance and for the purpose for which given. This Note (including the Security Agreement referred to herein): (a) constitutes the entire agreement and supersedes and shall prevail over all other prior agreements and undertakings, both written and oral, between the parties, and all written materials and term sheets disseminated or oral statements made with respect to the subject matter hereof, and (b) is

0189/001/00017854 v.1                                   3
Initials: ____

not intended to confer upon any other person any rights or remedies hereunder. In the event any claim is made by any party relating to any conflict, omission or ambiguity in this Note, no presumption or burden of proof or persuasion shall be implied by virtue of the fact that this Note was prepared by or at the request of a particular party. If any one or more of the provisions of this Note shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Note shall not be affected thereby. To the extent permitted by law, each party hereto waives any provision of law which renders any provision of this Note invalid, illegal or unenforceable in any respect. The captions of the sections of this Note are solely for convenience and are not intended to be a part of this Note and shall not be deemed to modify, explain, enlarge or restrict any of the provisions hereof. Maker has received a copy of this Note along with a copy of all other documents evidencing and securing this Note.

**IN WITNESS WHEREOF**, Maker has caused this Note to be executed and delivered as of the date and at the place first written above.

**"MAKER"**

DIGITALSOUND PRODUCTION SERVICES, INC.

By:
Name: Charles G. Klaus
Its:    Sole Director and Sole Responsible Officer

Acknowledged and Agreed:
**"PAYEE"**

ALEXANDER ALVORD

## SECURITY AGREEMENT

This SECURITY AGREEMENT (the "**Agreement**") is made by and between **DIGITALSOUND PRODUCTION SERVICES, INC.,** a California corporation (**"Debtor"**), and **Alexander Alvord**, an individual ("**Secured Party**"), effective as of August 25, 2015.

### RECITALS

On August 24, 2015, Debtor issued a revolving promissory note (the "**Note**") in the maximum principal amount of **Two Million Five Hundred Thousand Dollars ($2,500,000.00)** for the benefit of Secured Party and acknowledged therein an advance of the amount of Six Hundred Fifty Thousand Dollars ($650,000.00)by Secured Party to Debtor as more specifically set forth in the Note.

Debtor and Secured Party desire to enter into this Agreement in order to secure the performance of Debtor's obligations to Secured Party under the Note.

NOW, THEREFORE, in consideration of the covenants and conditions contained herein, the parties agree as follows:

### I.   CREATION OF SECURITY INTEREST

1.1   Grant. Debtor hereby assigns to Secured Party a present and continuing security interest (the "**Security Interest**") in all of Debtor's right, title and interest in and to all of its properties, rights, contracts, interests, claims and other assets of any nature whatsoever, wherever located, whether tangible or intangible, real, personal or mixed (collectively, the "**Collateral**"). The Collateral includes, without limitation:

a.      Debtor's bank, checking, deposit or securities accounts of any nature and their contents, and all cash and cash equivalents, including any form of deposit or prepayment held by a third party;

b.      All of Debtor's accounts receivable and notes receivable of any nature and their associated records, together with any unpaid interest accrued thereon;

c.      All of Debtor's furniture, fixtures and equipment, including, but not limited to, those items listed on Schedule 1.1(c) attached hereto and incorporated by reference;

d.      All rights of Debtor pursuant to warranties, representations and guarantees made by suppliers, manufacturers and contractors in connection with products or services affecting the Collateral, to the extent assignable;

e.      All rights and interests of Debtor in and to patents and patent applications owned by Debtor or licensed to Debtor by third parties, and all rights and interests of Debtor in and to artwork, processes, marketing material, designs, manuals, schematics, copyrights, blueprints, drawings, trade secrets, proprietary information, research, know-how, inventions, and

**Exh C_001**

manufacturing, engineering and other technical information, whether owned by Debtor or licensed from third parties by Debtor, and all trademarks, trade names and service trade names and service marks, used by Debtor, and all rights and interests of Debtor in and to software and all copyrights, and registrations and applications for such copyrights (collectively, "**Intellectual Property Rights**");

       f.     All rights and interests of Debtor in and to the name "DigitalSound Production Services" and "DPS," including variations thereof, and logos and all other names, marks, and logos used by Debtor now or in the past;

       g.     All rights and interests of Debtor in and to the promotional rights to represent Debtor's accomplishments and history;

       h.     All of Debtor's (1) general intangibles; and (2) rights under sale orders, purchase orders, contracts, agreements, leases, licenses, arrangements and commitments of any kind, which relate to the Collateral;

       i.     All of Debtor's customer and vendor lists, and all files and documents and information, including credit information, domain name, customer account information, user names, passwords, real names, postal and email addresses, telephone and facsimile numbers, customer credit card information, and billing history relating to such customers and vendors, whether maintained electronically or in hard copy to serve Debtor's customers;

       j.     All known and unknown, liquidated or unliquidated, contingent or fixed, claims, rights or causes of action which Debtor may have against any third party, including, without limitation, any insurance claims and the proceeds thereof;

       k.     All of Debtor's current inventory books, printed materials and other products;

       l.     All of Debtor's inventory of advertising, sales and customer materials, forms, labels, promotional materials, manuals and supplies used in the operation of Debtor's business;

       m.     All of Debtor's books, records, files, documents, computer programs, records, data and proprietary information relating to the Collateral, including, without limitation, Debtor's accounting and financial books and records;

       n.     All capital stock, partnership interests or other interests which Debtor may hold in any corporation, partnership or other entity that relates to the operation of the business of Debtor;

       o.     All of Debtor's rights and interests in and to that certain movie named "Hillsong Let Hope Rise"; and

**Exh C_002**

p.  To the extent not included in the foregoing, all rights and properties, tangible and intangible, in and to which Debtor has an interest, right or title.

1.2  Obligations Secured. The Security Interest is granted to secure the payment and performance of Debtor's obligations under the Note (the "**Obligations**").

1.3  Retained Rights. Until an event of default occurs hereunder, Debtor shall be entitled to retain possession and enjoy the use of the Collateral, which shall be kept only at the principal office of Debtor or at such other locations as Debtor otherwise holds or uses such Collateral in the ordinary course of Debtor's business.

1.4  Express Waivers. Debtor hereby expressly waives:

(a)  Diligence, presentment, protest, demand, and notice of every kind;

(b)  The right, if any, to require Secured Party to proceed against any person liable for the payment of any of the Obligations as a condition or prior to proceeding hereunder; and

(c)  The right, if any, to require Secured Party to foreclose upon, sell, or otherwise realize upon, collect, or apply any other property, real or personal, securing any of the Obligations as a condition or prior to proceeding hereunder.

## II.  WARRANTIES AND REPRESENTATIONS

Debtor warrants and represents to Secured Party, and covenants, that:

2.1  Debtor will defend title to the Collateral and the Security Interest of Secured Party therein against the claims and demands of all persons;

2.2  Debtor will, at its own cost and expense, maintain any and all intellectual property registrations, permits and licenses, and shall not voluntarily abandon, forfeit or lapse any registrations, permits, licenses or other rights, with respect to Intellectual Property Rights that are part of the Collateral;

2.3  Debtor will not waste, destroy, misuse, abuse, or illegally use the Collateral, or any part thereof, normal wear and tear excepted;

2.4  Debtor will keep the Collateral free and clear of all attachments, levies, taxes, liens, purchase money and other security interests, and all other encumbrances of every kind and nature (other than liens for taxes not then due) and will not sell, assign, transfer, lease, hypothecate, or in any way allow or suffer the Collateral, or any part thereof, to come into the possession of any other person outside of the ordinary course of business of Debtor;

2.5  Debtor will immediately notify Secured Party of any change in Debtor's address;

**Exh C_003**

2.6     Debtor shall not be released from this Agreement because of the loss, injury, or destruction of the Collateral;

2.7     Debtor shall allow Secured Party, and any of his representatives, free access to and right of inspection of the Collateral during business hours, subject to reasonable advance notice;

2.8     Debtor shall immediately give Secured Party written notice of any loss or damage to the Collateral other than due to normal wear and tear;

2.9     Debtor shall, when requested by Secured Party, execute any and all written instruments and documents and, at Debtor's sole cost and expense, do any other acts necessary to effectuate the purposes and provisions of this Agreement;

2.10     Each and every one of the papers, writings, documents, instruments, contracts, agreements, memoranda, receipts, guaranties, certificates, statements, notices, assignments, notes, and the like, presented to Secured Party by or on behalf of Debtor, at any time, in any way or to any extent connected with the events or transactions referred to or contemplated in this Agreement, are genuine and were duly executed, in each case to Debtor's knowledge;

2.11     Debtor shall indemnify and hold Secured Party harmless from all losses, costs, damages, liabilities, or expenses, including reasonable attorneys' fees, which Secured Party may sustain or incur by reason of defending or protecting the Security Interest herein granted, the priority thereof, enforcing payment of the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or connected with this Agreement;

2.12     Debtor shall at all times keep accounting records in accordance with generally accepted accounting practices and will give Secured Party, whenever reasonably requested, but not less than once a year, a true and correct financial statement reflecting its financial condition and its operations;

2.13     RESERVED

2.14     This Agreement, and all of its terms and provisions, is the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms herein, except to the extent enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws of general application relating to or affecting the enforcement of the rights of creditors or by equitable principles, whether enforcement is sought in equity or at law. The execution, delivery, and performance under this Agreement does not and will not, by the lapse of time, by the giving of notice, or the satisfaction of any other condition: (a) violate, or constitute a default under any agreement or other instrument to which Debtor is a party or by which Debtor is or may be bound; (b) violate, or constitute a default under, any law, requirement, rule, regulation, ordinance or restriction of any governmental authority applicable to Debtor; (c) result in the creation or imposition of any lien on any of the properties of Debtor other than in favor of Secured Party; and (d) does not require any consent or approval of any person, organization or entity; (iii) there is no action or proceeding pending before any court or governmental authority

which materially, adversely affects the condition (financial or otherwise) of Debtor, except for the President's Dispute and the Secured Party's Lawsuit (each as defined below).

2.15   Debtor has filed all federal, state and other tax returns required to be filed, subject to any extensions for such filings as may be permitted, and all taxes, assessments and other governmental charges due from Debtor has been fully paid.

2.16   There is no litigation, arbitration, proceeding or investigation pending, or, to the knowledge of Debtor's officers, threatened, against Debtor, except for (a) a possible action for wrongful termination of a former President of Debtor which has been asserted but not filed (the "**President's Dispute**") and (b) the lawsuit filed by Secured Party against Debtor and Anthony Dever (the "**Secured Party's Lawsuit**").

2.17   Debtor is in compliance with, and is not in violation or breach of, (a) any provision of its Articles of incorporation, as amended, by-laws, or any agreement or instrument to which it may be subject or by which it or any of its properties may be bound, or (b) any decree, order, judgment, statute, license, rule or regulation, or (c) any agreement to which it is a party, except in any of the foregoing cases where such lack of compliance, violation or breach would not, individually or in the aggregate, result in the imposition of substantial penalties or materially and adversely affect the financial condition, properties or business of Debtor taken as a whole.

2.18   The grant of Security Interest contained in this Agreement is effective to vest in Secured Party the rights of a secured party in the Collateral, and, by virtue of the execution and delivery by Debtor of this Agreement and the applicable UCC-1 financing statement, Secured Party shall have a valid first lien upon and security interest in the Collateral.

## III.   INSURANCE

Debtor, at its sole cost and expense, shall keep the Collateral insured against loss or damage by fire, theft, explosion, sprinklers, and all other hazards and risks ordinarily insured against by owners of similar properties in similar businesses for the full insurable value thereof, and shall maintain business interruption insurance and public liability and property damage insurance relating to Debtor's ownership and use of the Collateral, in each case to the extent that Debtor is able to obtain such insurance at commercially reasonable rates and to the extent that Debtor has the funds to pay for such insurance or Secured Party has advanced funds to pay for such insurance. All policies of insurance shall be in such form, with such companies, and in such amounts as may be reasonably satisfactory to Secured Party. Debtor shall deliver to Secured Party certified copies of all required policies of insurance and, at the reasonable request of Secured Party, evidence of the payment of all premiums therefor. All required policies of insurance (except those of public liability and property damage) shall contain an endorsement, in a form reasonably satisfactory to Secured Party, showing loss payable to Secured Party. Upon receipt by Secured Party all proceeds shall be applied on the account of the Obligations. To secure the payment of the Obligations, Debtor grants Secured Party a Security Interest in and to all required policies of insurance (except those of public liability and property damage) and the proceeds thereof and shall direct all insurers to pay all proceeds directly to Secured Party.

Exh C_005

Debtor hereby irrevocably appoints Secured Party (and any of his designated employees or agents) as Debtor's attorney-in-fact for the purpose of making, settling, and adjusting claims and for making all determinations and decisions with respect to policies of insurance required hereunder. Debtor will give Secured Party at least ten (10) days' written notice before any policy or policies of insurance may be altered or canceled, and that no act or default of Debtor, or any other person, shall affect the right of Secured Party to recover under any required policy or policies of insurance. Secured Party, without waiving or releasing any Obligations or defaults of Debtor hereunder, may, but shall have no obligation to, obtain and maintain any required policies of insurance and to pay premiums and take any other action which Secured Party deems advisable. All amounts disbursed by Secured Party under this Article III, together with all costs and expenses, including reasonable attorneys' fees, shall be repaid by Debtor, together with annual interest at two percent (2%) above the prime interest rate published by Bank of America at the time of the payment of such amounts, unless otherwise limited by applicable law.

## IV. RIGHTS OF SECURED PARTY

Secured Party may, at his option, pay, purchase, contest, compromise, or discharge any attachments, levies, taxes, claims, debts, liens, charges, security interests, or encumbrances which, in his judgment, may affect or appear to affect the Collateral or Secured Party's rights under this Agreement, and may pay for the maintenance and preservation of the Collateral. All amounts advanced by Secured Party under this Article IV, together with all costs and expenses, including reasonable attorneys' fees, shall be repaid by Debtor, together with annual interest at two percent (2%) above the prime interest rate published by Bank of America at the time of the payment of such amounts, unless otherwise limited by applicable law.

## V. DEFAULT

5.1     Events of Default. Debtor shall be in default hereunder if:

(i)     Debtor fails to make any payment of principal and/or interest as required by the Note; or

(ii)    Debtor transfers or assigns all or any portion of the Collateral or any interest therein (whether legal or equitable), or enters into an agreement to do any of the foregoing, outside of the ordinary course of business; or

(iii)   Any representation, warranty or statement of information provided to Secured Party by or on behalf of Debtor is, or at the time made or furnished under this Agreement or the Note was, false in any material respect; or

(iv)    Debtor shall (1) apply for or consent to the appointment of, or the taking of possession by, a receiver, custodian, trustee, liquidator or similar official of itself or of all or a substantial part of its property (except at the request of Secured Party or as otherwise caused by Secured Party), (2) make a general assignment for the benefit of its creditors, (3) commence a voluntary case under the United States Bankruptcy Code (as now or hereafter in effect) (4) take any action or commence any case or proceeding under any law relating to bankruptcy,

Exh C_006

insolvency, reorganization, winding-up or composition or adjustment of debts, or any other law providing for the relief of debtors, (6) fail to contest in a timely or appropriate manner, or acquiesce in writing to, any petition filed against it in an involuntary case under the Federal Bankruptcy Code or other law (except at the request of Secured Party or as otherwise caused by Secured Party), (7) take any action under the laws of its jurisdiction of incorporation or organization similar to any of the foregoing, or (8) take any corporate action for the purpose of effecting any of the foregoing (except at the request of Secured Party or as otherwise caused by Secured Party); or

(v)   Debtor shall be indicted for a federal crime, a punishment for which could include the forfeiture of any material assets of Debtor; or

(vi)   Following written notice and a ten (10)-day cure period, failure to perform any Obligation set forth in this Agreement.

5.2    Remedies. Upon a default by Debtor, and at the option of Secured Party, all of the Obligations shall become immediately due and payable without notice or demand, and then and thereafter Secured Party shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code. At such time, Secured Party shall have the immediate right to:

(a)   Take and maintain possession of the Collateral and, in so doing, alone or with any other person, enter upon the premises where the Collateral may be found or believed by Secured Party to be located. Debtor hereby waives all claims for damages and otherwise, due to, arising from, or connected with any entry upon the premises or any seizure of the Collateral by Secured Party;

(b)   Maintain possession and dispose of the Collateral on any premises of Debtor or under Debtor's control; or

(c)   Remove the Collateral or any part thereof to any place Secured Party may desire.

5.3    Sale of Collateral. If requested by Secured Party, Debtor shall assemble and make the Collateral available to Secured Party at a place to be designated by Secured Party. In the event of a sale by Secured Party after a default by Debtor, the Collateral need not be in view of those present attending the sale, nor at the same location at which the sale is being conducted. Secured Party may sell the Collateral in such order, priority, and lots as is commercially reasonable in the opinion of Secured Party. Debtor shall receive all notices of sale required to be given and which cannot be waived by law, all other notices of every type, nature, or kind being hereby expressly waived by Debtor. Any notice required to be given by law shall be conclusively presumed given and received by Debtor when it is mailed, postage prepaid, to Debtor at its last business address known to Secured Party. Unless the Collateral is perishable, depreciates rapidly, or is of a type customarily sold on a recognized market, Debtor will be given reasonable notice of the time and place of any public sale, or of the time on or after which any private sale or other intended disposition is to be made. The requirements of reasonable notice

Exh C_007

shall be met if notice is mailed, postage prepaid, to Debtor at least five (5) days before the time of sale or other disposition. Secured Party may be the purchaser at any public sale of the Collateral.

5.4 Power of Attorney. Debtor hereby appoints Secured Party its irrevocable attorney with power, upon default by Debtor, to do any and all things necessary and proper to carry out the purposes contemplated in this Agreement.

## VI. NOTICE

All notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement will be in writing and will be deemed to have been given when personally delivered or three business days after being mailed by first class U.S. mail, return receipt requested, or when receipt is acknowledged, if sent by facsimile, telecopy or other electronic transmission device. Notices, demands and communications to Debtor and Secured Party will, unless another address is specified in writing, be sent to the address indicated below:

| | |
|---|---|
| Debtor | DigitalSound Production Services, Inc. |
| | 7643 North San Fernando Road |
| | Burbank, CA 91505 |
| | Attention: Charles G. Klaus |

| | |
|---|---|
| With a copy (which) shall not constitute notice) to: | Ara A. Babaian, Esq. |
| | Encore Law Group |
| | 9401 Wilshire Boulevard, Suite 900 |
| | Beverly Hills, CA 90212 |

| | |
|---|---|
| Secured Party | Alexander Alvord |
| | 52 Archipelago Dr |
| | Newport Coast, CA 92657 |

| | |
|---|---|
| With a copy (which shall not constitute notice) to: | Robert Huttenhoff |
| | ~~Shulman Hodges & Bastian LLP~~ |
| | 100 Spectrum Center Drive, suite 600 |
| | Irvine, CA 92618 |

Any correctly addressed Notice that is refused, unclaimed or undelivered because of an act or omission of the party to be notified shall be considered to be effective as of the first day that the Notice was refused, unclaimed or considered undeliverable by the postal authorities, messenger or overnight delivery service. The parties hereto shall have the right from time to time, and at any time, to change their respective addresses and each shall have the right to specify as his or its address any other address within the United States of America, by giving to the other party at least thirty (30) days' prior written notice thereof, in the manner prescribed herein; provided,

0189/001/00017855 v.1                  8

**Exh C_008**

however, that to be effective, any such change of address must be actually received (as evidenced by a return receipt).

## VII. MISCELLANEOUS

7.1 Waiver. Failure or delay by either party to insist on the strict performance of any covenant, term, provision or condition hereunder, or to exercise any option herein contained, or to pursue any claim or right arising herefrom, shall not constitute or be construed as a waiver of such covenant, term, provision, condition, option, claim or right. Any waiver by either party shall not constitute or be construed as a continuing waiver of any subsequent default.

7.2 Modification. This Agreement is entered into for the benefit of the parties hereto and their respective successors, heirs and assigns, and cannot be amended or terminated except in a writing signed by both parties.

7.3 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

7.4 Severability. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

7.5 Entire Agreement. This Agreement and the Note contain the entire understanding and agreement between the parties hereto with respect to the matters set forth herein, and all prior and contemporaneous understandings and agreements, whether oral or written, are entirely superseded.

7.6 Professional Fees and Costs. If a lawsuit, arbitration or other proceedings are instituted by any party to enforce any of the terms or conditions of this Agreement against any other party hereto, the prevailing party in such litigation, arbitration or proceedings shall be entitled, as an additional item of damages, to the reasonable costs of collection, such reasonable attorneys' and other professional fees and costs (including, but not limited to, expert, investigation and witness fees), court costs, arbitrators' fees, arbitration administrative fees, travel expenses, and other out-of pocket expenses or costs of such other proceedings, as may be fixed by any court of competent jurisdiction, arbitrator or other judicial or quasi-judicial body having jurisdiction thereof, whether or not suit is filed and whether or not such litigation or proceedings proceed to a final judgment or award. In addition to the foregoing award of attorneys' fees, the prevailing party shall be entitled to its attorneys' fees incurred in any post-judgment proceedings to enforce any judgment or award. This provision is separate and several and shall survive the merger of this provision into any judgment. For the purposes of this section, any party receiving an arbitration award or a judgment for damages or other amounts shall be deemed to be the prevailing party, regardless of amount of the damage awarded or whether the award or judgment was based on all or some of such party's claims or causes of action.

Exh C_009

7.7     Assignment and Delegation. This Agreement and the rights and duties hereunder may not be assigned by Debtor. Debtor may not assign this Agreement or the benefits it is to receive hereunder nor may it delegate the services and obligations it is required to perform under this Agreement. The parties agree that any attempt by Debtor to assign its rights or delegate its duties hereunder shall be null and void.

7.8     Further Assurances. Whenever, and so often as, requested by a party, the other party will promptly execute and deliver, or cause to be executed and delivered, all such other and further instruments, documents or assurances, and promptly do or cause to be done all such other and further things as may be necessary and reasonably required in order to further and more fully discharge and perform the obligations and agreements hereunder, and to more fully vest in such requesting party, all rights, interests, powers, benefits, privileges and advantages conferred, or intended to be conferred, upon him or it by this Agreement.

7.9     Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the successors, heirs and assigns of the parties to the extent this Agreement is assignable.

7.10    Executed Counterparts. This Agreement may be executed in any number of original, fax, PDF or copied counterparts, and all counterparts shall be considered together as one agreement. A faxed, PDF or copied counterpart shall have the same force and effect as an original signed counterpart. Each of the parties hereby expressly forever waives any and all rights to raise the use of a fax machine to deliver a signature, or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a fax machine or by PDF transmission, as a defense to the formation of a contract.

7.11    Section Headings. The various section headings are inserted for convenience of reference only and shall not affect the meaning or interpretation of this Agreement or any section thereof.

7.12    Survival of Representations and Warranties. All of Debtor's representations and warranties contained in this Agreement shall (a) survive the execution, delivery and acceptance hereof by the parties, (b) remain true until the Obligations are fully performed, paid and satisfied.

*[The remainder of this page is intentionally left blank; signature page follows.]*

**Exh C_010**

IN WITNESS WHEREOF, the parties have executed this Security Agreement in one or more counterparts which, taken together, shall constitute one agreement, which Security Agreement shall be effective as of the date first written above.

**DEBTOR:**
**DIGITALSOUND PRODUCTION**
**SERVICES, INC.**

By: _____

Name:  Charles G. Klaus
Its:  Sole Director and Sole Responsible Officer

**SECURED PARTY:**

By: _____
Print Name: Alexander Alvord

Exh C_011

## SCHEDULE 1.1(c)

## DEBTOR'S FURNITURE, FIXTURES AND EQUIPMENT

[SEE ATTACHED]

Exh C_012

 First Corporate solutions

# SEARCH REPORT

914 S Street, Sacramento, CA 95811
P: 8883528993 F: 8887137409

EZRA BRUTZKUS GUBNER LLP
Attn: Lora De La Portilla
21650 Oxnard Street Suite 500
Woodland Hills, California 91367-4911

**Report Date:** November 17, 2015
**FCS Reference Number:** SAC1602676
**Client Reference Number:** 4243.001

## State Search Report

**Type of Search:** UCC, Federal and State Tax Liens, and Judgments Search
**Jurisdiction/Filing Office:** State of California, California Secretary of State
**Effective Index Date:** November 05, 2015 at 5:00 PM
**Name(s) Searched:** DIGITALSOUND PRODUCTION SERVICES, INC.

## Results

According to the Official Records of the filing office shown above, there are no liens other than those set out below:

**Name Searched:** DIGITALSOUND PRODUCTION SERVICES, INC.

**Results:** See attached Listing with copies

## END OF REPORT

ReportID: 8002                          Page 1 of 1                          SAC1602676-582670

We guarantee our information to be as accurate as reasonable care can make it; however, the ultimate responsibility for maintaining files rests with the filing officer, and we accept no liability beyond the exercise of reasonable care. No guarantee is given nor liability assumed with respect to the identity of any party named or referred to above with respect to the validity, legal effect or priority of any matter shown herein. In no event shall FIRST CORPORATE SOLUTIONS' liability exceed the fee amount.

**Exh D_001**

Search Date: November 16, 2015

 First Corporate solutions

# SEARCH REPORT

914 S Street, Sacramento, CA 95811
P: 800.406.1577 | F: 800.230.2217

## UCC Search Report

| | |
|---|---|
| **Type of Search** | UCCs, Federal Tax Liens, State Tax Liens, and Judgments |
| **Jurisdiction/Filing Office** | State of California, Secretary of State Uniform Commercial Code Division |
| **Indexed Through** | Nov. 05, 2015 |
| **Subject Search Name** | DIGITALSOUND PRODUCTION SERVICES, INC. |
| **Search Key Entered** | DIGITALSOUND |

## Results

Based on a search of the indices of the Uniform Commercial Code Division of the Secretary of State of California, there are no active liens of record other than those set out below. Liens reflected in this report were based on the searcher's individual search parameters, the search key entered, as well as the searcher's choice of the liens ultimately included or excluded herein. Certification can only be obtained through the office of the California Secretary of State.

### 1. UCC Financing Statement

**Document No.** 20137365233952      Lapses 6/14/2018
**Filed** 6/14/2013

**Debtor** DIGITALSOUND PRODUCTION SERVICES, INC.
7691 N SAN FERNANDO RD
BURBANK CA 91505

**Secured Party** WELLS FARGO BANK, N.A.
300 TRI-STATE INTERNATIONAL STE 400
LINCOLNSHIRE IL 60069

### 2. State Tax Lien

**Document No.** 20147436941837      Lapses 11/17/2024
**Filed** 11/17/2014

**Debtor** DIGITALSOUND PRODUCTION SERVICES, INC.
7643 N SAN FERNANDO RD
BURBANK CA 91505

**Secured Party** EMPLOYMENT DEVELOPMENT DEPARTMENT
PO BOX 826880
SACRAMENTO CA 94280

**Amendment Type** Termination
**File No.** 201574477812
**Filed** 1/29/2015 12:00:00 AM

### 3. UCC Financing Statement

**Document No.** 20157464927500      Lapses 5/15/2020
**Filed** 5/15/2015

**Debtor** DIGITALSOUND PRODUCTION SERVICES, INC.
12950 PIERCE ST
PACOIMA CA 91331-2526

**Exh D_002**

CORPORATE CLEARING & INDUSTRIAL MANAGERS, P.C.
GREENE NY 13778

#### 4. UCC Financing Statement

| | |
|---|---|
| **Document No.** 20157483441916 | Lapses 9/3/2020 |
| **Filed** 9/3/2015 | |

**Debtor** DIGITALSOUND PRODUCTION SERVICES, INC.
ATTN: CHARLES G. KLAUS, 12950 PIERCE STREET
PACOIMA CA 91331

**Secured Party** ALVORD, ALEXANDER
52 ARCHIPELAGO DRIVE
NEWPORT COAST CA 92657

#### 5. Attachment lien

| | |
|---|---|
| **Document No.** 20157490996585 | Lapses 10/19/2018 |
| **Filed** 10/19/2015 | |

**Debtor** DIGITALSOUND PRODUCTION SERVICES, INC.
2168 MICHAELSON DRIVE
IRVINE CA 92612

**Secured Party** ALVORD, ALEXANDER AKA ALEX
100 SPECTRUM CENTER DRIVE, STE.
IRVINE CA 92618

#### 6. UCC Financing Statement

| | |
|---|---|
| **Document No.** 20157493423381 | Lapses 11/3/2020 |
| **Filed** 11/3/2015 | |

**Debtor** DIGITALSOUND PRODUCTION SERVICES INC.
12950 PIERCE ST.
PACOIMA CA 91331

**Secured Party** ARTS & COMMERCE PRODUCTIONS
5062 LANKERSHIM BLVD. SUITE 412
NORTH HOLLYWOOD CA 91601

We assume no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, legal effect or priority of any matter shown herein; nor, due to our inability to independently verify the accuracy of this data as provided by government and other sources, do we make any guaranty or representation as to its accuracy.

---------- END OF REPORT ----------

## Report Parameters

The UCC Revised Article 9 Model Administrative Rules (MARS) provide state filing offices with a set of guidelines for producing a legally compliant UCC lien search report. The search tool used to create this search report was designed to satisfy the requirements under MARS while providing the searcher with increased flexibility.

Flexible search logic generates a more inclusive search report and addresses the inconsistencies in searches performed within states that did not effectively adopt the MARS guidelines. Further, these specially designed broad-based searching features aid in the location of involuntary liens such as Federal and State Tax Liens and Judgment Liens and liens that may not be located in state databases limited to the MARS guidelines for the reporting of UCCs.

Exh D_003

## UCC FINANCING STATEMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|
| Corporation Service Company |
| 800-858-5294 |

| B. SEND ACKNOWLEDGMENT TO: (Name and Address) | |
|---|---|
| CORPORATION SERVICE COMPANY<br>801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703<br>USA | **DOCUMENT NUMBER:** 38153010002<br>**FILING NUMBER:** 13-7365233952<br>**FILING DATE:** 06/14/2013 09:21<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| OR | 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| | Digitalsound Production Services, Inc. | | | | | |

| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|
| | | | | | | |

| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| 7691 N San Fernando Rd | Burbank | | CA | 91505 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | |
|---|---|---|---|---|---|
| | | Corporation | CA | 3358445 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| OR | 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|
| | | | | | | |

| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| | | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| OR | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | Wells Fargo Bank, N.A. | | | | |

| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 300 Tri-State International Ste 400 | Lincolnshire | IL | 60069 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

The equipment described below and all equipment parts, accessories, substitutions, additions, accessions and replacements thereto and thereof, now or hereafter installed in, affixed to, or used in conjunction therewith and the proceeds thereof, together with all installment payments, insurance proceeds, other proceeds and payments due and to become due arising from or relating to said equipment.

1- used 2006- Nissan Forklift CL30 serial number CPL01-9N1378

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| ☐ 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)**<br>[ADDITIONAL FEE]   [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
[76887473]

Exh D_004

RECORDING REQUESTED BY:
STATE OF CALIFORNIA
EMPLOYMENT DEVELOPMENT DEPARTMENT
1-888-745-3886

**WHEN RECORDED MAIL TO:**
STATE OF CALIFORNIA
EMPLOYMENT DEVELOPMENT DEPARTMENT
LIEN GROUP, MIC 92G
PO BOX 826880
SACRAMENTO, CA 94280-0001


**14-7436941837**
**11/17/2014  17:00**


**FILED**
CALIFORNIA
SECRETARY OF STATE
**SOS**

45834440026  UCC 1 FILING

## NOTICE OF STATE TAX LIEN
(Filed pursuant to Section 7171 of the Government Code)

DIGITALSOUND PRODUCTION SERVICES, INC.

7643 N SAN FERNANDO RD
BURBANK, CA 91505-1073

Secretary of State

Letter ID. __L2077578048__        Certificate No. __G000899603__

| TAX PERIOD | TAX | PENALTY | INTEREST | TOTAL |
|---|---|---|---|---|
| 10/01/2011 to 12/31/2011 | $0.00 | $9,657.75 | $1,207.35 | $10,865.10 |

Interest calculated through 11/10/2014

The Director of the Employment Development Department hereby certifies the above is liable to the State of California for amounts due and required to be paid as determined under the provisions of the California Unemployment Insurance Code, the Revenue and Taxation Code, or both.

THE AMOUNT OF DELINQUENCY ABOVE SET FORTH SHALL BE A LIEN UPON ALL REAL OR PERSONAL PROPERTY AND RIGHTS TO SUCH PROPERTY, INCLUDING ALL AFTER-ACQUIRED PROPERTY AND RIGHTS TO PROPERTY BELONGING TO THE ABOVE NAMED.

Date: 11/10/2014
At Sacramento, California



The Director of the Employment Development Department has complied with all provisions of the California Unemployment Insurance Code in the computation and levy of the amount assessed and has caused this notice of lien to be issued by a duly authorized representative.

*Teresa Gage*

By _____

Authorized Representative
This agency has adopted the use of a facsimile signature as affixed above.

RECORDING REQUESTED BY:
STATE OF CALIFORNIA
Employment Development Department
888-745-3886

WHEN RECORDED MAIL TO:
STATE OF CALIFORNIA
Employment Development Department
LIEN GROUP, MIC 92G
PO BOX 826880
SACRAMENTO, CA 94280-0001

**1574477812**

**01/29/2015 17:00**

 **FILED**
CALIFORNIA
SECRETARY OF STATE
SOS


46978410014   UCC 3 FILING

# RELEASE OF LIEN
## IMPOSED UNDER A CERTIFICATE OR NOTICE OF STATE TAX LIEN

CERTIFICATE NO.   G000899603

LETTER ID.   L0553461056

The Director of the Employment Development Department of the State of California hereby releases and certifies that there has been released all property from any lien imposed thereon by the filing and recording of that certain Certificate or Notice of Amount of tax, penalty, and interest due under Section 1703 of the California Unemployment Insurance Code or Section 7171 of the Government Code from:

## DIGITALSOUND PRODUCTION SERVICES, INC.

In the amount of $10,865.10          which was recorded on   11/17/2014

in volume/page   14-7436941837          of Official Records of the Secretary of State

 THE DIRECTOR OF THE EMPLOYMENT
DEVELOPMENT DEPARTMENT OF THE
STATE OF CALIFORNIA HAS CAUSED
THIS RELEASE TO BE ISSUED BY THE
DULY AUTHORIZED REPRESENTATIVE.

Date: 01/26/2015
This document is produced on a laser printer.

*Teresa Gage*

By

Authorized Representative
This agency has adopted the use of a
facsimile signature as affixed above.

DE2184 Rev 5 (7-12)                                          1471250432_P230_E1

**Exh D_006**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Gisella Melendez
800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CT LIEN SOLUTIONS
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 48884860002
FILING NUMBER: 15-7464927500
FILING DATE: 05/15/2015 11:35

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| DIGITALSOUND PRODUCTION SERVICES, INC. | | | | |
| **OR** 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12950 PIERCE ST | PACOIMA | CA | 91331-2526 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **OR** 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| RAYMOND LEASING CORPORATION | | | | |
| **OR** 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| CORPORATE HEADQUARTERS, P.O. BOX 130 | GREENE | NY | 13778 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All material handling equipment and associated accessories, including without limitation, lift trucks, pallet trucks, orderpickers, batteries and chargers, in the possession of Debtor or hereafter acquired by Debtor in accordance with Equipment Master Lease Schedule No. _____323401_____ or any Schedule thereunder.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| **6a.** Check only if applicable and check only one box: | **6b.** Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION (if applicable):** ☑ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
CA-0-48048995-49222456

FILING OFFICE COPY

Exh D_007

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| Robert Huttenhoff Esq. |
| 949-340-3400 |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
| --- |
| Shulman Hodges & Bastian LLP |
| 100 Spectrum Center Drive, Suite 600 |
| Irvine, CA 92618 |
| USA |

**DOCUMENT NUMBER: 50829550002**
**FILING NUMBER: 15-7483441916**
**FILING DATE: 09/03/2015 16:19**

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- | --- |
| OR | DIGITALSOUND PRODUCTION SERVICES, INC. | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| Attn: Charles G. Klaus, 12950 PIERCE STREET | PACOIMA | CA | 91331 | USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- | --- |
| OR | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- | --- |
| OR | | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | ALVORD | ALEXANDER | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 52 ARCHIPELAGO DRIVE | NEWPORT COAST | CA | 92657 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

**See Attachment(s)**

**5.** Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check <u>only</u> if applicable and check <u>only</u> one box: | 6b. Check <u>only</u> if applicable and check <u>only</u> one box: |
| --- | --- |
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

| 8. OPTIONAL FILER REFERENCE DATA: |
| --- |
| 5001-000 (4970-000) |

**FILING OFFICE COPY**

**Exh D_008**

EXHIBIT "A" TO UCC-1 FINANCING STATEMENT

DEBTOR:            DIGITALSOUND PRODUCTION SERVICES, INC.

SECURED PARTY:  ALEXANDER ALVORD

DEBTOR GRANTED A SECURITY INTEREST IN THE COLLATERAL TO
SECURED PARTY PURSUANT TO THE SECURITY AGREEMENT DATED AS OF
AUGUST 25, 2015, BY AND BETWEEN DEBTOR AND SECURED PARTY,
WHICH DESCRIBES THE COLLATERAL, INCLUDING A DETAILED LIST OF
DEBTOR'S FURNITURE, FIXTURES AND EQUIPMENT ATTACHED AS
SCHEDULE 1.1(c) THERETO, A COPY OF WHICH IS ATTACHED HERETO.

Debtor hereby assigns to Secured Party a present and continuing security interest in all of
Debtor's right, title and interest in and to all of its properties, rights, contracts, interests,
claims and other assets of any nature whatsoever, wherever located, whether tangible or
intangible, real, personal or mixed (collectively, the "Collateral"). The Collateral
includes, without limitation:

a.       Debtor's bank, checking, deposit or securities accounts of any nature and their
contents, and all cash and cash equivalents, including any form of deposit or prepayment
held by a third party;

b.       All of Debtor's accounts receivable and notes receivable of any nature and their
associated records, together with any unpaid interest accrued thereon;

c.       All of Debtor's furniture, fixtures and equipment, including, but not limited to,
those items listed and attached hereto and incorporated by reference;

d.       All rights of Debtor pursuant to warranties, representations and guarantees made
by suppliers, manufacturers and contractors in connection with products or services
affecting the Collateral, to the extent assignable;

e.       All rights and interests of Debtor in and to patents and patent applications owned
by Debtor or licensed to Debtor by third parties, and all rights and interests of Debtor in
and to artwork, processes, marketing material, designs, manuals, schematics, copyrights,
blueprints, drawings, trade secrets, proprietary information, research, know-how,
inventions, and manufacturing, engineering and other technical information, whether
owned by Debtor or licensed by Debtor, and all trademarks, trade
names and service trade names and service marks, used by Debtor, and all rights and
interests of Debtor in and to software and all copyrights, and registrations and
applications for such copyrights;

Exh D_009

f. All rights and interests of Debtor in and to the name "DigitalSound Production Services" and "DPS," including variations thereof, and logos and all other names, marks, and logos used by Debtor now or in the past;

g. All rights and interests of Debtor in and to the promotional rights to represent Debtor's accomplishments and history;

h. All of Debtor's (1) general intangibles; and (2) rights under sale orders, purchase orders, contracts, agreements, leases, licenses, arrangements and commitments of any kind, which relate to the Collateral;

i. All of Debtor's customer and vendor lists, and all files and documents and information, including credit information, domain name, customer account information, user names, passwords, real names, postal and email addresses, telephone and facsimile numbers, customer credit card information, and billing history relating to such customers and vendors, whether maintained electronically or in hard copy to serve Debtor's customers;

j. All known and unknown, liquidated or unliquidated, contingent or fixed, claims, rights or causes of action which Debtor may have against any third party, including, without limitation, any insurance claims and the proceeds thereof;

k. All of Debtor's current inventory books, printed materials and other products;

l. All of Debtor's inventory of advertising, sales and customer materials, forms, labels, promotional materials, manuals and supplies used in the operation of Debtor's business;

m. All of Debtor's books, records, files, documents, computer programs, records, data and proprietary information relating to the Collateral, including, without limitation, Debtor's accounting and financial books and records;

n. All capital stock, partnership interests or other interests which Debtor may hold in any corporation, partnership or other entity that relates to the operation of the business of Debtor;

o. All of Debtor's rights and interests in and to that certain movie named "Hillsong Let Hope Rise"; and

p. To the extent not included in the foregoing, all rights and properties, tangible and intangible, in and to which Debtor has an interest, right or title.

**Exh D_010**

**NOTICE OF ATTACHMENT LIEN / TERMINATION / AMENDMENT**
FOLLOW INSTRUCTIONS CAREFULLY (front and back of form)

A. NAME & PHONE OF FILER'S CONTACT (optional)
Samuel Romero, (949) 813-7244

B. SEND ACKNOWLEDGMENT TO: (NAME AND ADDRESS)

Samuel Romero
Shulman Hodges & Bastian, LLP
100 Spectrum Center Drive, Ste. 600
Irvine, CA 92618

**15-7490996585**
**10/19/2015 15:39**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

51549150002    UCC 1 FILING

THIS SPACE FOR FILING OFFICE USE ONLY

1. COURT
Superior Court of the State of California, for the County of Orange

2. TITLE AND NUMBER OF CASE
Alex Alvord v. Anthony Dever et al., Case No. 30-2015-00801037 CU-FR-CJC

3. DEFENDANT'S/DEBTOR'S EXACT LEGAL NAME – insert only one name, either 3a or 3b. Do not abbreviate or combine names.

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| DigitalSound Production Services, Inc. | | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 2168 Michaelson Drive | Irvine | CA | 92612 | | US |

4. PLAINTIFF'S/SECURED PARTY'S EXACT NAME – Enter one name, either 4a or 4b. Do not abbreviate or combine names.

| 4a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| 4b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| Alvord | Alexander aka Alex | | | | |
| 4c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 100 Spectrum Center Drive, Ste. | Irvine | CA | 92618 | | US |

5. NOTICE IS HEREBY GIVEN THAT:

[X] Plaintiff has acquired an attachment lien in accordance with the provisions of the California Code of Civil procedure on the specific property described below A Writ of Attachment has been issued by the court on

(date)    September 14, 2015

[ ] By order of the court dated_____ plaintiff no longer has an attachment lien on the collateral of defendant. The notice originally filed with the Secretary of State dated _____ and File No _____ is thereby terminated.

[ ] Plaintiff no longer claims an attachment lien on the collateral of defendant. The notice originally filed with the Secretary of State dated _____ and File No. _____ is thereby terminated.

[ ] By order of the court dated _____ the notice of attachment lien originally filed with the Secretary of State dated_____ and File No _____ is amended as set forth on the attached page.

6. DESCRIPTION OF SPECIFIC PROPERTY ATTACHED
See Attachment A

7. I certify that I have received the writ of attachment described above, or the order described above or plaintiff's written release of attachment lien described above, as the case may be

SHERIFF OR MARSHAL (Printed name)
Robert Rubio

SIGNATURE and TITLE

Process Server

Date

Robert Rubio

Registration #2010-28, Sacramento County
200 W. Santa Ana Blvd., Suite 300
Santa Ana, CA 92701

**Exh D_011**

## ATTACHMENT "A"

A.    Real Property (CCP §§ 487.010(c)(1), 488.315 and 700.015): Any Interests in real property owned by defendant, except for any leasehold interests with unexpired terms of less than one year.

B.    Accounts Receivable (CCP §§ 487.010(c)(2), 488.470 and 488.435): Accounts receivable, chattel paper, and general intangibles arising out of the conduct by the defendant of a trade, business, or profession, except any such individual claim with a principal balance of less than one hundred fifty dollars ($150.00).

C.    Final Money Judgments (CCP §§ 487.010(c)(6) and 488.480): Final money judgments arising out of the conduct by the defendant of a trade, business or profession.

D.    Negotiable Documents of Title (CCP §§ 487.010(c)(8) and 488.445): Negotiable documents of title held by defendant.

E.    Securities (CCP §§ 487.010 (c)(10) and 488.450): Any and all shares of stock held by defendant.

F.    Equipment(CCP §§ 487.010(c)(3) and 488.375)

G.    Inventory (CCP §§ 487.010(c)(5) and 488.395)

H.    Money On Business Premise And Elsewhere (CCP §§ 487.010(c)(7), 488.395 and 488.455): Money on the premises where defendant conducted a trade, business or profession, and except for the first one thousand dollars ($1,000.00), money located elsewhere than on such premises and deposit accounts, but if the defendant has more than one deposit account, or has at least one deposit account and money located elsewhere than on the premises where a trade, business or profession is conducted by the defendant, the court, upon application of the plaintiff, may order that the writ of attachment be levied so that an aggregate amount of one thousand dollars ($1,000.00) in the form of such money and in such accounts remains free of levy.

I.    Safety Deposit Boxes (CCP § 488.460)

J.    Instruments (CCP §§ 487.010(c)(9) and 488.440)

AT-165

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, state bar number, and address):*<br>After recording return to:<br>Samuel J. Romero - Bar No. 232824<br>Leonard M. Shulman - Bar No. 126349<br>SHULMAN HODGES & BASTIAN LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>   TELEPHONE NO.: (949) 340-3400<br>   FAX NO. *(Optional)*: (949) 340-3000<br>E-MAIL ADDRESS *(Optional)*: Sromero@shbllp.com<br>ATTORNEY FOR *(Name)*: Alex Alvord | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, California 92702
BRANCH NAME: Central Justice Center

PLAINTIFF: ALEX ALVORD

DEFENDANT: ANTHONY DEVER, et al.

**FOR RECORDER'S USE ONLY**

| CASE NUMBER |
|---|
| 30-2015-00801037-CU-FR-CJC |

LEVYING OFFICER *(Name and Address):*
Orange County Sheriff, Civil Process South
4601 Jamboree Rd., Rm 108
Newport Beach, Ca 92660
(949) 476-4820, CivilStatHarbor@ocsd.org

| |
|---|
| **NOTICE OF ATTACHMENT**<br>[This form is used in connection with levy under a writ of attachment.] |

**FOR COURT USE ONLY**

TO THE PERSON NOTIFIED *(name):* Secretary of State

1. Plaintiff in this action seeks to attach property in which defendant has an interest. The property to be attached is
   a. [x] *(describe property):* See attachment "A" (As to DigitalSound Productions, Inc.)

   b. [x] described in the *Writ of Attachment* and *Order for Issuance of Writ of Attachment,* attached hereto and incorporated by reference.

2. You are notified as
   a. [ ] a defendant.
   b. [X] a person other than defendant *(state capacity in which person is being notified):*
   Third party in possession

*(Read Information for Defendant or Information for Person Other than Defendant on reverse.)*

3. A notice was filed with the
   a. [x] Secretary of State.
   b. [ ] Department of Motor Vehicles.
   c. [ ] Department of Housing and Community Development.

4. Notice of Attachment was
   a. [✓] mailed on *(date):* 10- -15
   b. [✓] delivered on *(date):* 10- -15
   c. [ ] posted on *(date):*
   d. [✓] filed on *(date):* 10- -15
   e. [ ] recorded on *(date):*

Robert Rubio
Registration #2010-28, Sacramento County
200 W. Santa Ana Blvd., Suite 300
Santa Ana, CA 92701

Signed by:

▶

[ ] Levying officer  [✓] Registered process server

Page 1 of 2

**NOTICE OF ATTACHMENT**
(Attachment)

Legal
Solutions
℗ Plus

Code of Civil Procedure,
§§482.030, 488.060

Exh D_013

## —INFORMATION FOR DEFENDANT—

1. The levying officer may be required to take custody of property described in item 1 in your possession or under your control. You have a right to be represented by an attorney in this lawsuit.

2. You may claim any available exemption for your property. An exemption for real property may be claimed any time before the entry of judgment. If the right to attach order or writ of attachment was issued without a noticed hearing and you wish to claim an exemption for personal property, you must do so within 30 days after the levying officer serves you with the Notice of Attachment describing the property. If you do not claim an exemption, you may lose it and the property is subject to attachment. If you wish to seek the advice of an attorney, you should do so immediately so that a claim of exemption can be filed on time.

3. Plaintiff has filed an undertaking. You have the right to object to the undertaking and may apply for an order to substitute an undertaking for your property which has been or is subject to being attached.

4. You have a duty to release tangible personal property to the levying officer. You have the rights and duties specified in Code of Civil Procedure section 488.395 if your farm products or inventory of a going business have been or are subject to attachment.

5. If the property is perishable or will greatly deteriorate in value, or for other good reason, you may apply ex parte, or if the court or court rule requires, by noticed motion, for an order appointing a receiver or directing the levying officer to take any action necessary to preserve the value of the property, including selling the property. The court may order any receiver to be paid from the proceeds of the sale of your property.

6. You may apply for a release of the attachment to the extent that the value of your interest in the property exceeds the amount necessary to satisfy the attachment.

7. You may apply to the court for an order modifying or vacating any temporary protective order in the interests of justice or for an order terminating the same upon filing an undertaking.

8. If the writ of attachment has been issued against you because you are a nonresident, you may have the right to attach order set aside by filing a general appearance.

9. If the writ of attachment was issued on an ex parte application, you may apply for an order that the right to attach order be set aside, the writ quashed, and any property levied upon pursuant to the writ be released.

10. If you recover judgment against plaintiff, you may apply for a release of all property attached by plaintiff under the Writ of Attachment. If judgment is recovered against you and you appeal, you have the right to obtain the release of your property by filing a sufficient undertaking.

11. You may object to the amount sought to be secured by the attachment.

12. You may recover damages for wrongful attachment.

## —INFORMATION FOR PERSON OTHER THAN DEFENDANT—

1. If the property attached or sought to be attached is in your possession or under your control and you do not claim the right to possession or a security interest, you must deliver the property to the levying officer. If you do not deny an obligation levied upon or do not claim a priority over the plaintiff's lien, you must pay to the levying officer the amount that is due and payable and that becomes due and payable during the period of the attachment lien. You must execute and deliver any documents needed to transfer the property.

2. You must complete the accompanying Memorandum of Garnishee.

3. If you claim ownership or the right to possession of real or personal property levied upon or if you claim a security interest in or lien on personal property levied upon, you may make a third-party claim and obtain the release of the property pursuant to Code of Civil Procedure sections 720.010-720.800.

4. If you have an interest in the property attached or sought to be attached and the property is perishable or will greatly deteriorate in value, or for other good reason, you may apply ex parte, or if the court or court rule requires, by noticed motion, for an order appointing a receiver or directing the levying officer to take any action necessary to preserve the value of the property, including selling the property. The court may order any receiver to be paid from the proceeds of the sale of your property.

5. **Make checks payable to the levying officer.**

**NOTICE OF ATTACHMENT**
**(Attachment)**

51549150002

**Exh D_014**

## ATTACHMENT "A"

A.    Real Property (CCP §§ 487.010(c)(l), 488.315 and 700.015): Any Interests in real property owned by defendant, except for any leasehold interests with unexpired terms of less than one year.

B.    Accounts Receivable (CCP §§ 487.010(c)(2), 488.470 and 488.435): Accounts receivable, chattel paper, and general intangibles arising out of the conduct by the defendant of a trade, business, or profession, except any such individual claim with a principal balance of less than one hundred fifty dollars ($150.00).

C.    Final Money Judgments (CCP §§ 487.010(c)(6) and 488.480): Final money judgments arising out of the conduct by the defendant of a trade, business or profession.

D.    Negotiable Documents of Title (CCP §§ 487.010(c)(8) and 488.445): Negotiable documents of title held by defendant.

E.    Securities (CCP §§ 487.010 (c)(10) and 488.450): Any and all shares of stock held by defendant.

F.    Equipment(CCP §§ 487.010(c)(3) and 488.375)

G.    Inventory (CCP §§ 487.010(c)(5) and 488.395)

H.    Money On Business Premise And Elsewhere (CCP §§ 487.010(c)(7), 488.395 and 488.455): Money on the premises where defendant conducted a trade, business or profession, and except for the first one thousand dollars ($1,000.00), money located elsewhere than on such premises and deposit accounts, but if the defendant has more than one deposit account, or has at least one deposit account and money located elsewhere than on the premises where a trade, business or profession is conducted by the defendant, the court, upon application of the plaintiff, may order that the writ of attachment be levied so that an aggregate amount of one thousand dollars ($1,000.00) in the form of such money and in such accounts remains free of levy.

I.    Safety Deposit Boxes (CCP § 488.460)

J.    Instruments (CCP §§ 487.010(c)(9) and  488.440)

51549150002

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Robert Howell |
| 818-849-5610 |

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Robert L. Howell
13263 Ventura Blvd. #103
Studio City, CA 91604
USA

**DOCUMENT NUMBER: 51784700002**
**FILING NUMBER: 15-7493423381**
**FILING DATE: 11/03/2015 22:48**

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| DigitalSound Production Services Inc. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12950 Pierce St. | Pacoima | CA | 91331 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Arts & Commerce Productions | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5062 Lankershim Blvd. Suite 412 | North Hollywood | CA | 91601 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
1 ETC Power System; 1 ETC Control System; 72 ETC ColorSource Spot Light Engine w/Barrel Black; 72 ECT 36 degree EDLT lens tube with
lens installed; 72 ETC A PowerCon to Edison ULC 1573; 72 ETC to PowerCon Male to PowerCon Female Fixture Power Jumper; 45 ETC
ColorSource PAR, Black,; 45 ETC A PowerCon to Edison, UL 1573; 45 ETC C-Clamp, 45 ETC Lens, 45 ETC PowerCon Male to
PowerCon Female
Fixture Power Jumper; 14 ECT ColorSource PAR, Black; 14 ETC PowerCon to Edison, UL 1573; 14 ETC C-Clamp; 14 ETC lens.

1 ETC Control Console

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions)    ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien    ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**

**Exh D_016**



# SEARCH REPORT

914 S Street,  Sacramento, CA  95811
P: 8883528993  F: 8887137409

EZRA BRUTZKUS GUBNER LLP
Attn:  Lora De La Portilla
21650 Oxnard Street Suite 500
Woodland Hills, California  91367-4911

**Report Date:** November 16, 2015
**FCS Reference Number:** SAC1602676
**Client Reference Number:** 4243.001

## County Search Report

**Type of Search:** UCC/Fixture Filings (5 Years), Federal and State Tax Liens (10
Years) and Abstracts of Judgments Search (10 Years)
**Jurisdiction/Filing Office:** Los Angeles County, California Recorder
**Effective Index Date:** November 06, 2015  at         5:00 PM
**Name(s) Searched:** DIGITALSOUND PRODUCTION SERVICES, INC.

## Results

According to the Official Records of the filing office shown above, there are no liens other than those set out below:

**Name Searched:** DIGITALSOUND PRODUCTION SERVICES, INC.

**Results:** Clear

## END OF REPORT

We guarantee our information to be as accurate as reasonable care can make it; however, the ultimate responsibility for maintaining files rests with
the filing officer, and we accept no liability beyond the exercise of reasonable care.  No guarantee is given nor liability assumed with respect to the
identity of any party named or referred to above with respect to the validity, legal effect or priority of any matter shown herein.  In no event shall
FIRST CORPORATE SOLUTIONS' liability exceed the fee amount.

**Exh D_017**

| | | | | | Payroll: 11/16/15 to 11/29/15 (10 Days) | | | | Total |
|---|---|---|---|---|---|---|---|---|---|
| Summary of Payroll by Name | | | | | | | | | |
| # | TYPE | LAST NAME | FIRST NAME | TITLE | Gross Pay | ER Taxes | Exp Rpt | Total | Insider |
| | | | | | 10 | | | | |
| **EMPLOYEES:** | | | | | | | | | |
| 1 | EE | ALVARADO | MICHAEL | Cable Head | 1,764.00 | 237.62 | - | 2,001.62 | |
| 2 | EE | BURR | JUSTIN | Lead Automated Tech | 2,039.44 | 274.72 | - | 2,314.16 | |
| 3 | EE | DERNDERIAN | TALIN | Contract & Revenue Accountant | 2,019.24 | 205.97 | - | 2,225.21 | |
| 4 | EE | ESPOSITO | LOREN | Account Executive | 2,307.70 | 310.84 | - | 2,618.54 | |
| 5 | EE | ESTALA | RAYMOND | Dock Supervisor | 2,141.61 | 281.57 | - | 2,423.18 | |
| 6 | EE-T | GARCIA-SANTAMARINA | GUILLERMO | Integration Specialist | 2,661.33 | 318.72 | - | 2,980.05 | |
| 7 | EE | GOMEZ | DANIEL | Rigging Technician | 1,720.00 | 231.69 | - | 1,951.69 | |
| 8 | EE-T | HUSTON | TOM | Design | 3,230.76 | 435.20 | - | 3,665.96 | |
| 9 | EE-T | JEHDIAN | FRIDA | Labor Coordinator | 2,237.48 | 228.22 | - | 2,465.70 | |
| 10 | EE-T | JENSEN | CHELSY | Receptionist | 1,608.00 | 216.45 | - | 1,824.45 | |
| 11 | EE | KANSELBAUM | BEN | PM - Audio | 2,307.70 | 310.84 | - | 2,618.54 | |
| 12 | EE | KHALIL | KARIM | Operations Administrator | 1,642.30 | 167.51 | - | 1,809.81 | |
| 13 | EE | KOBELJA | PAUL | VP of Motion Pictures | 5,000.00 | 262.00 | - | 5,262.00 | |
| 14 | EE-T | KURTZ | ROBERT | VP House of Worship | 4,848.08 | 428.69 | - | 5,276.77 | |
| 15 | EE | KWA | MATTHEW | ASSISTANT MOVING LIGHT TECH | 630.00 | 84.85 | - | 714.85 | |
| 16 | EE | LAVIETES | TINY | SUB RENTAL COORDINATOR | 2,538.46 | 341.93 | - | 2,880.39 | |
| 17 | EE | LEE | JOHN | VP OF CONCERT TOURING | 12,115.38 | 484.62 | - | 12,600.00 | |
| 18 | EE | MAURETTE | BRITTANY | CONSOLE & VIDEO TECH | 1,984.32 | 296.99 | - | 2,281.31 | |
| 19 | EE-T | MCINTOSH | GEOFFREY | PROJECT MANAGER | 4,700.00 | 643.68 | - | 5,343.68 | |
| 20 | EE | MEREDITH | CRAIG | WAREHOUSE MANAGER | 3,230.76 | 435.20 | - | 3,665.96 | |
| 21 | EE | MOORE | RICHARD | ENGINEERING TECH/PURCHASING | 2,232.36 | 300.70 | - | 2,533.06 | |
| 22 | EE | RICHARD-KASSAR | ANASTASIA | CINEMA COORDINATOR | 1,788.45 | 240.72 | - | 2,029.17 | |
| 23 | Insider | SCHROEDER | GREGORY | CFO | 7,115.38 | 725.76 | - | 7,841.14 | 7,841.14 |
| 24 | EE-T | SCOTT | LA TONYA | VP OF HUMAN RESOURCES | 6,346.16 | 253.84 | - | 6,600.00 | |
| 25 | EE | WEILER | ERIC | CONTROLLER | 2,423.08 | 247.14 | - | 2,670.22 | |
| 26 | EE | WOYTAS | MARTIN | ASSISTANT DOCK SUPERVISOR | 1,360.42 | 182.30 | - | 1,542.72 | |
| 27 | EE | YANEZ JR. | DANIEL | ASSET MANAGER | 2,692.30 | 362.66 | - | 3,054.96 | |
| 28 | EE | YANEZ SR. | DANIEL | DRIVER | 1,705.00 | 227.62 | - | 1,932.62 | |
| | | | | | | | | | |
| 28 | | EMPLOYEES | | TOTAL TEAM | 86,389.71 | 8,738.05 | - | 95,127.76 | 7,841.14 |
| | | | | | | | | | |
| **SUB-CONTRACTORS** | | | | | | | | | |
| 1 | EE | FINELY | ROBERT | CONTRACTOR | 4,615.39 | - | - | 4,615.39 | |
| 2 | Insider | KLAUS | CHUCK | CEO | - | - | - | - | - |
| | | | | | | | | | |
| 2 | | SUB-CONTRACTORS | | TOTAL REMAINING EE's | 4,615.39 | - | - | 4,615.39 | |
| | | | | | | | | | |
| **FREELANCERS** | | | | | | | | | |
| 1 | EE | TAFUR-BODAS | JOSEPH | Freelancer | 300.00 | 51.00 | - | 351.00 | |
| 2 | EE | GUITTEREZ | JOSE | Freelancer | 600.00 | 102.00 | - | 702.00 | |
| 3 | EE | PICKETT | SEAN | Freelancer | 300.00 | 51.00 | - | 351.00 | |
| 4 | EE | MENDOZA | DAMIAN | Freelancer | 300.00 | 51.00 | - | 351.00 | |
| 5 | EE | FRASER | MARIO | Freelancer | 700.00 | 119.00 | - | 819.00 | |
| 6 | EE | GREEN | JONATHAN | Freelancer | 700.00 | 119.00 | - | 819.00 | |
| 7 | EE | MAHLER | STEPHEN | Freelancer | 300.00 | 51.00 | - | 351.00 | |
| 8 | EE | ADAMS | JOEY | Freelancer | 1,500.00 | 255.00 | | 1,755.00 | |
| | | | | | | | | | |
| 8 | | FREELANCERS | | TOTAL RESIGNED EE's | 4,700.00 | 799.00 | - | 5,499.00 | - |
| | | | | | | | | | |
| 38 | | TOTAL | | PROJECT DESIGNER | 95,705.10 | 9,537.05 | - | 105,242.15 | 7,841.14 |

**Exh E_001**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
21650 Burbank Blvd., Suite 500, Woodland Hills, California 91367

A true and correct copy of the foregoing document entitled: **DECLARATION OF CHARLES G. KLAUS IN SUPPORT OF: (1) EMERGENCY MOTION FOR (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF THE DEBTOR'S ASSETS, (B) SCHEDULING HEARING TO CONSIDER THE SALE, AND (C) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER AUTHORIZING AND APPROVING (A) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES [DOC. #2]; (2) EMERGENCY MOTION FOR ORDERS:  (A) AUTHORIZING THE DEBTOR TO BORROW MONEY SECURED BY ESTATE PROPERTY; (B) AUTHORIZING USE OF CASH COLLATERAL; (C) GRANTING ADEQUATE PROTECTION FOR USE OF PREPETITION COLLATERAL; AND (D) GRANTING RELATED RELIEF [DOC. #3]; (3) EMERGENCY MOTION OF DEBTOR FOR ENTRY OF AN ORDER (1) AUTHORIZING DEBTOR TO PAY PREPETITION (A) WAGES, SALARIES, AND OTHER COMPENSATION, (B) EMPLOYEE MEDICAL, WORKERS' COMPENSATION AND SIMILAR BENEFITS, AND (C) REIMBURSABLE EMPLOYEE EXPENSES; ETC. [DOC. #4]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 1, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Steven T Gubner    sgubner@ebg-law.com, ecf@ebg-law.com
- Susan K Seflin    sseflin@ebg-law.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 1, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Personal Delivery: The  Honorable Martin R. Barash**

[Additional Proof of Service to Be Filed]

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 1, 2015 | Susan K. Seflin | /s/ Susan K. Seflin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.