1  STEVEN T. GUBNER - Bar No. 156593
   SUSAN K. SEFLIN - Bar No. 213865
2  JERROLD L. BREGMAN - Bar No. 149896
   EZRA BRUTZKUS GUBNER LLP
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone: (818) 827-9000
   Facsimile: (818) 827-9099
5  Email: sgubner@ebg-law.com
          sseflin@ebg-law.com
6         jbregman@ebg-law.com

7  Proposed Attorneys for Chapter 11 Debtor and
   Debtor in Possession

**FILED & ENTERED**

**DEC 17 2015**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Bever    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No. 1:15-bk-13952-MB |
| DigitalSound Production Services, Inc., | Chapter 11 |
| Debtor. | **ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF THE DEBTOR'S ASSETS, (B) SCHEDULING AN AUCTION AND A HEARING TO CONSIDER THE SALE, AND (C) APPROVING FORM AND MANNER OF NOTICE THEREOF** |
| | **Hearing:**<br>Date:   December 8, 2015<br>Time:   1:30 p.m.<br>Place:  Courtroom 303<br>        21041 Burbank Blvd.<br>        Woodland Hills, California |
| | **Auction and Sale Hearing:**<br>Date:   December 22, 2015<br>Time:   10:00 0.m.<br>Place:  Courtroom 303<br>        21041 Burbank Blvd.<br>        Woodland Hills, California |

1

On December 8, 2015 at 1:30 p.m., a continued hearing (the "Hearing") was held before the Honorable Martin R. Barash, United States Bankruptcy Judge for the Central District of California, for the Court to consider the *Notice of and Emergency Motion for (I) An Order (A) Approving Bidding Procedures in Connection with Sale of the Debtor's Assets, (B) Scheduling Hearing to Consider the Sale, and (C) Approving Form and Manner of Notice Thereof; and (II) an Order Authorizing and Approving (A) the Sale of Substantially All of the Debtor's Assets and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; Memorandum of Points And Authorities* [Doc. # 2] (the "Motion") filed by Digitalsound Production Services, Inc., the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor").[1] Appearances were made as noted on the record of the Hearing.

The Bankruptcy Court having reviewed the Motion and the pleadings filed in support thereof; the Court having overruled the objection of Anthony Dever to the Motion; the Debtor and Video Equipment Rentals ("VER") having put forth their agreement resolving VER's opposition to the Motion on the record of the Hearing; and it appearing that the Bankruptcy Court has jurisdiction over this matter; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and having found that notice of the Motion was adequate and appropriate under the circumstances; and the Bankruptcy Court being satisfied, based on the representations made in the Motion and at the hearing on the Motion, that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the relief requested in the Motion having been withdrawn or overruled on the merits; having set forth the Court's findings of facts an conclusions of law on the record of the Hearing, and finding good cause appearing therefor,

/ / /

/ / /

/ / /

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion.

**IT IS HEREBY FINDS AND ORDERS AS FOLLOWS**:[2]

1. The Motion is granted as set forth in this Order.

2. The Court has jurisdiction over this matter and over the Acquired Assets of the Debtor and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 365, and Fed. R. Bankr. P. 2002, 6004, 6006, 9008 and 9014. Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Debtor has offered good and sufficient reasons for, and the best interests of its estate will be served by, this Court granting the Motion to the extent provided in this Order, including approval of (i) the Bidding Procedures, attached hereto as **Annex 1**; (ii) the Break-up Fee and Expense Reimbursement recited therein; (iii) the procedures described below for the determination of the amounts necessary to cure defaults under the Assigned Contracts so as to permit the assumption and assignment under section 365 of the Bankruptcy Code of the Assigned Contracts; and (iv) the form and manner of notice of the Auction and Sale Hearing described in the Motion and this Order.

4. Each of the Break-up Fee and the Expense Reimbursement (a) is an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of section 503(b) of the Bankruptcy Code; (b) is of substantial benefit to the Debtor's estate and the collateral of parties asserting liens, security interests, encumbrances or other interests in and to the Acquired Assets, which are adequately protected from any diminution arising from such Break-up Fee and Expense Reimbursement; (c) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by Stalking Horse Purchaser notwithstanding that the proposed sale is subject to higher and better offers for the Acquired Assets; (d) was negotiated by the parties at arms' length and in good faith; and (e) necessary to ensure that

---

[2] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and vice versa.

1457979

Stalking Horse Purchaser will continue to pursue its proposed acquisition of the Acquired Assets. The Break-up Fee and the Expense Reimbursement were a material inducement for, and condition of, Stalking Horse Purchaser's entry into the Stalking Horse APA.  Thus, assurance to Stalking Horse Purchaser of payment of the Break-up Fee and Expense Reimbursement will promote more competitive bidding by inducing Stalking Horse Purchaser's bid that otherwise would not have been made, and without which bidding would have been limited.

5. Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Haring.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

6. The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justification and other circumstances demonstrating that the relief granted by this Order is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

7. The proposed notice of the Auction, the Sale Hearing and the Bidding Procedures, as set forth in the Motion and this Order, is appropriate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing and the Bidding Procedures, and no other or further notice than as provided for herein shall be required for the Sale or the assumption and assignment of the Assigned Contracts.

8. The Bidding Procedures were negotiated in good faith and at arms' length.

9. The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets. All objections to the entry of this Order or the relief provided herein, that have not been withdrawn with prejudice, waived, resolved or settled are hereby denied and overruled on the merits with prejudice.

10. All Bidders submitting a bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

11. In the event the Stalking Horse APA is the only Qualified Bid in respect of the Acquired Assets received by the Bidding Deadline, no Auction shall be conducted for the Acquired Assets, and the Stalking Horse Purchaser shall be the Successful Bidder for the Acquired Assets.

12. The following dates and deadlines regarding competitive bidding are hereby established (subject to modification if needed):

    a.    **Bidding Deadline**: **<u>Friday, December 18, 2015 at 6:00 p.m.</u>** (prevailing Pacific Time), is the deadline by which all binding bids must actually be received pursuant to the Bidding Procedures (the "Bidding Deadline"). Bidders must deliver the necessary bid documents required to constitute a Qualified Bid (as defined herein) to Charles Klaus at cklaus@sbcglobal.net, Susan Seflin at sseflin@ebg-law.com, and Jerrold L. Bregman at jbregman@ebg-law.com. The Debtor has the sole discretion to extend the Bidding Deadline prior to the Auction in the exercise of its business judgment subject to the terms of the Stalking Horse APA.

    b.    **Auction**: **<u>December 22, 2015, commencing at 10:00 a.m.</u>** (prevailing Pacific time), at the Bankruptcy Court provided at least one Qualified Bid other than the Stalking Horse APA is timely received.

    c.    **Sale Objection Deadline**: the deadline to object to the Sale transactions and/or the assumption and assignment of Assigned Contracts or cure amounts related thereto shall be **<u>December 18, 2015 at 6:00 p.m.</u>** (prevailing Pacific Time) (the "Sale Objection Deadline"). Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto including, without limitation, the Debtor's assumption and assignment to the Successful Bidder all of the Assigned Contracts, and for purposes of section 363(f) of the Bankruptcy Code; and

    d.    **Sale Hearing**: **<u>December 22, 2015 at 10:00 a.m.</u>** (prevailing Pacific time), is the date and time of the Sale Hearing before this Bankruptcy Court. Any obligations of the Debtor set forth in the Stalking Horse APA, that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse APA are authorized as set forth herein and shall be fully enforceable as of the date of entry of this Order.

13. The assets to be offered for sale (the "Acquired Assets") consist of substantially all of the estate's assets (other than Excluded Assets), as set forth in more detail in the Stalking Horse APA which is annexed as **Exhibit 2** to the Motion.

14. The Debtor has and will continue to provide information regarding the Acquired Assets and the Debtor to Bidders and bona fide (as determined by the Debtor) potential Bidders.

15. The following Bidding Procedures shall govern the submission, receipt and analysis of any bids relating to the sale of the Acquired Assets, and any party desiring to submit a higher or otherwise better offer to purchase the Acquired Assets shall do so strictly in accordance with the

terms of the following Bidding Procedures, as potentially modified by the Debtor, following consultation with the Committee, if any.

16. A "Qualified Bid" for purposes hereof shall mean a Bidder's executed asset purchase agreement ("APA"), submitted as set forth above, in substantially the same form as the asset purchase agreement, dated as of November 30, 2015 ("Stalking Horse APA"), between the Debtor and Atomic Lighting LLC ("Stalking Horse Purchaser"), and which satisfies each of the following conditions, each as determined by the Debtor in the exercise of its sole and absolute discretion subject to the terms of the Stalking Horse APA:

a. Minimum Overbid. The APA shall provide for a purchase price for the Acquired Assets having a **value of not less than $6,230,242** ("Minimum Overbid Price") consisting of $4,095,000 in cash, plus breakup fee of $122,850, plus reimbursement of expenses of $75,000, plus initial overbid amount $57,150 plus the Assumed Liabilities (as defined in the Stalking Horse APA) in the amount of $1,880,242.

b. Written & Irrevocable. The APA shall be in writing and state that it shall remain irrevocable unless and until the Debtor accepts a higher or otherwise better bid, and until such Bidder is not selected as the Back-Up Bidder (as that term is defined below).

c. Components. The overbid shall (i) clearly state the consideration to be paid in cash and the consideration to be paid in Assumed Obligations (as defined below); (ii) identify the executory contracts and unexpired leases ("Assigned Contracts") as well as any other obligations to be assumed and assigned to the bidder (together with Assigned Contracts, if any, "Assumed Obligations"); (iii) identify the employees by name or position, if any and if known, whom the Bidder anticipates in good faith that it would likely hire upon the consummation of the prospective transaction; (iv) be clearly marked as a "redline" to show any and all revisions to the Stalking Horse APA.

d. Contingencies. The APA shall not contain any financing or due diligence contingencies.

e. Deposit. The APA must be accompanied by a deposit in an amount equal to 5% of the cash consideration stated in such Bidder's APA (the "Deposit"), to be submitted to

1457979

the Debtor in the form of a wire transfer of immediately available funds, certified check or cashier's check, which amount shall be deposited into the attorney-client trust account of Ezra Brutzkus Gubner LLP, and received by such law firm on or before the Bidding Deadline; provided that any and all Deposits shall be non-refundable unless and until the Auction has taken place and the Bidder making the Deposit is not selected as either the Successful Bidder (as defined below) or Back-Up Bidder (as defined below), in which case the Deposit will be refunded unless otherwise forfeited as a result of a breach by the Bidder. The Deposit of the successful bidder(s) shall, upon consummation of the successful bid, be credited to the purchase price paid for the Acquired Assets. If any successful bidder fails to consummate the successful bid due to such successful bidder's default, then the Deposit of such successful bidder shall be forfeited to, and retained irrevocably by, the Debtor, and the Debtor shall retain the right to pursue all available remedies. The Deposit of any Bidder whose overbid is not accepted by the Debtor as a Qualified Bid shall be returned to such Bidder within three business days of the Debtor making such determination. The Deposit of any Bidder who submits a Qualified Bid shall be returned within three (3) business days after (i) consummation of the Sale; and (ii) the Auction (except for the back-up bidder(s)'s Deposit which shall be applied or returned as specified above).

  f. Sale "As Is". The APA must acknowledge that the sale contemplated thereunder shall be on an "as-is and where-is" basis, and that such Bidder (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or premises in making its Qualified Bid; and (ii) did not any more so than the Stalking Horse APA rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, regarding the Acquired Assets or the completeness of any information provided in connection with its bid.

  g. No Contingencies. The APA shall acknowledge it is not subject to any due diligence contingencies or financing contingencies of any kind whatsoever.

  h. Demonstrated Capacity. The APA must be accompanied by sufficient and adequate financial and other information to demonstrate, to the Debtor's satisfaction

determined in the Debtor's sole and absolute determination, that such Bidder has the presently existing financial ability to consummate the proposed transactions required by its bid and provide adequate assurance of future performance of all Assumed Obligations.

  i. Identity.  The APA shall disclose the identity and contact information of each person or entity that will be participating in connection with such bid, and the complete terms of any such participation.

  j. Authorization.  The APA shall represent that the Bidder has obtained all necessary internal authorization or approval, including from its board of directors (or comparable governing body), with respect to the submission, execution, delivery, and closing of its bid and the transactions contemplated thereby.

  k. Prohibition against Collusive Bidding.  The APA shall include a written statement acknowledging the prohibition against collusive bidding.

  l. No Fees.  The APA shall state that it is not subject to any break-up fee, transaction fee or any similar type of payment from the Debtor to the Bidder.

  m. Consent to Jurisdiction.  The APA shall specify that the Bidder submits to the subject matter and personal jurisdiction of the Bankruptcy Court exercising jurisdiction over the Debtor with respect to the interpretation and enforcement of the Bidding Procedures and any claims arising from or relating to any APA.

17. The Sale Notice, substantially in the form attached as **Exhibit 3** to the Motion, is hereby approved.  With two business days after the entry of this Order, the Debtor shall file the Sale Notice and serve the Sale Notice via first-class mail, electronic mail or overnight delivery, on (i) all Potential Bidders of whom Debtor is aware; (ii) Debtor's 20 largest unsecured creditors; (iii) counsel to the Creditors' Committee, if any; (iv) all relevant federal, state and local taxing authorities; (v) all parties asserting or known to hold a lien on or security interest in any of the Acquired Assets; (vi) all counter parties to executory contracts and unexpired leases; (vii) the U.S. Trustee; (viii) both shareholders of the Debtor's stock, inclusive of the minority shareholder who is serving as the DIP lender; (ix) any entities that have filed a request for service of filings pursuant to Bankruptcy Rule 2002; and (x) all other parties entitled to notice under Bankruptcy Rule 2002.

1457979

18. Within three (3) business days after entry of this Order, or as soon as practicable thereafter, the Debtor will issue a press release containing the information in the Auction and Hearing Notice and will post the Auction and Hearing Notice onto the Debtor's website.

19. The Debtor shall evaluate all bids in its sole and absolute discretion. Bids will be valued based upon several factors as weighted and applied by the Debtor in its sole and absolute discretion, including, without limitation, items such as (i) the purchase price and the net value (including assumed liabilities and other obligations to be assumed by the Bidder) provided by such bid; (ii) the relative ability of the Bidder to consummate the transactions contemplated by its bid; (iii) the nature and extent of any proposed revisions to the Stalking Horse APA; (iv) the effect of the proposed sale on the Debtor's operations and employees; and (v) other factors affecting the speed, certainty, and value of the transactions contemplated by such bid.

20. The Auction shall be conducted in accordance with the following procedures (the "Auction Procedures"):

    a. The Auction will be conducted in an open and fair manner as determined by the Debtor and the Bankruptcy Court; provided, that any such other Auction procedures shall not be inconsistent with any order of the Bankruptcy Court or the Stalking Horse APA.

    b. Each participating Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale.

    c. The Debtor, in its sole and absolute discretion, may approve joint bidding that is openly disclosed to the Debtor except as modified on the record to allow VER to submit a joint bid.

    d. The Auction shall be governed by such other procedures as are announced by the Debtor, in its sole and absolute discretion, in consultation with the Committee, if any, from time to time on the record at the Auction; provided, that any such other Auction procedures shall not be inconsistent with any order of the Bankruptcy Court or the Stalking Horse APA.

1457979

Case 1:15-bk-13952-MB    Doc 56    Filed 12/17/15    Entered 12/17/15 11:30:42    Desc
Main Document    Page 10 of 19

   e.  Bidding shall continue until such time as the highest and best bid is determined by the Debtor in its sole and absolute discretion in consultation with the Committee, if any.

   f.  The Debtor may recess the Auction at any time and from time to time in its sole and absolute discretion and subject to Bankruptcy Court approval.

  21.  The Successful Bidder shall take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been a demonstration of adequate assurance of future performance under the Assigned Contracts, such as furnishing affidavits, financial information and other documents or information for filing with the Bankruptcy Court if necessary (as determined by the Debtor) and making knowledgeable representatives available to testify before the Bankruptcy Court.

  22.  In the event that the Stalking Horse Purchaser becomes entitled to the Break-Up Fee and Expense Reimbursement based upon the Debtor selecting another bidder as the Successful Bidder at Auction and providing that the Stalking Horse Purchaser is not in material breach of the Stalking Horse APA, then immediately following the closing of the Acquired Assets to the Successful Bidder and without the need for further order of the Bankruptcy Court, the Debtor shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Purchaser in immediately available funds from the proceeds of such closing, by wire transfer to the account specified by the Stalking Horse Purchaser in writing.

  23.  Back-Up Bidders.  At the conclusion of the Auction, the Debtor may designate a Back-Up Bidder or multiple Back-Up Bidders.  If a Back-Up Bidder is selected, such Back-Up-Bidder's Deposit shall be released upon the later to occur of (a) the closing of a transaction with the Successful Bidder, or other Back-Up Bidder; or (b) twenty-two (22) days after the entry of an order approving the Debtor's Sale of the Acquired Assets.  If the Successful Bidder does not close the transaction for any reason, then the Back-Up Bidder's Deposit shall be non-refundable and the Debtor shall close the transaction upon the terms of such Back-Up Bidder's APA as it may have been improved at the Auction.

1457979

24. Closing. The closing for the sale of the Acquired Assets to the Successful Bidder or Back-Up Bidder (the "Closing") shall be held in the office of counsel for the Debtor, or such other location as is agreed to by the parties, no later than the Closing Deadline unless expressly agreed to in writing by the Debtor and the Successful Bidder or Back-Up Bidder, as applicable.

25. The procedures set forth below regarding the assumption and assignment of the Assigned Contracts in connection with the sale are hereby approved (the "Assumption Procedures"). These Assumption Procedures shall govern the assumption and assignment of all Assigned Contracts that may be assumed and assigned in connection with a sale of the Acquired Assets.

a. Cure Notice. The Debtor shall file with the Bankruptcy Court and serve via first-class mail, electronic mail or overnight delivery, the Cure Notice on all non-Debtor counterparties to the Assigned Contracts and their counsel (if known) by no later than December 9, 2015. The Cure Notice shall (i) identify the Assigned Contracts, (ii) provide the Debtor's good faith estimates of the corresponding cure amounts required to cure all outstanding defaults under each of the Assigned Contracts (each, a "Cure Amount"), and (iii) include the deadline by which any counterparty to the Contract or Lease may file an objection to the proposed assumption and assignment and/or the Cure Amount proposed with respect thereto, and the procedures relating thereto; *provided, however*, that service of a Cure Notice shall not constitute an admission that such Contract or Lease is an executory contract or unexpired lease.

b. Adequate Assurance. Upon request of the non-Debtor counterparty and by electronic mail, the Debtor shall serve upon such party the evidence of adequate assurance of future performance with respect to the relevant Assigned Contracts(s) provided by the Stalking Horse Purchaser or Successful Bidder(s), including the legal name of the proposed assignee, the proposed assignee's financial ability to perform under the Assumed Contract(s) and the contact information for the person with the proposed assignee whom counterparties may contact if they wish to obtain further information regarding such Stalking Horse Purchaser or Successful Bidder. The Debtor may but is not required to file such evidence with the Bankruptcy Court.

c. Objections. Objections, if any, to the proposed assumption and assignment or the Cure proposed with respect to any of the Assigned Contracts, must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and any order of the Bankruptcy Court; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amount, the alleged correct Cure Amount, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Bankruptcy Court by the Sale Objection Deadline (or such later deadline as may be stated in the Cure Notice).

d. Dispute Resolution. Any objection to the proposed assumption and assignment of any of the Assigned Contracts or related cure proposed in connection with the Sale that remains unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at a later date as fixed by the Bankruptcy Court) with no additional notice of such hearing to be required to be filed or otherwise provided); *provided, however*, that with respect to any Assumed Contract to which such objection pertains solely to the Cure Amount proposed with respect thereto, the Debtor may seek at the Sale Hearing to assume such Assumed Contract and assign it to the Successful Bidder; provided further, however, that the Debtor or the Successful Bidder, as applicable, must segregate funds from the net proceeds of the

applicable sale equal to the undisputed portion of the applicable Cure Amount pending the resolution of such dispute by the Bankruptcy Court or by agreement of the parties, and pay any amount owed promptly to the applicable counterparty upon such resolution.

e.  **Any party who fails to timely file an objection to its scheduled Cure Amount listed on the Cure Notice or to the assumption and assignment of an Assumed Contract (a) shall be forever barred from objecting thereto, including, without limitation, (i) making any demands for additional Cure Amounts or monetary compensation on account of any alleged defaults against the Debtor, it's estate, the Stalking Horse Purchaser or other Successful Bidder(s) arising from the Auction, if any, with respect to any such Assumed Contract, and (ii) asserting that the Stalking Horse Purchaser or other Successful Bidder(s) has not provided adequate assurance of future performance as of the date of the Sale Order and (b) shall be deemed to consent to the Sale.**

26. The Debtor, after consultation with the Committee, if any, reserves the right to implement additional procedural rules, provided that such lack of conformity is not material and is not inconsistent with any order of the Bankruptcy Court or the APA.

27. All Interested Parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Bankruptcy Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or the Sale) to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to any of the foregoing matters.

28. The Debtor is authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1457979

29. Notwithstanding the applicability of Bankruptcy Rule 6004(h), 6006(d), 7062 and 9014, this Order shall be immediately effective and enforceable upon entry of this Order. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**IT IS SO ORDERED.**

###

Date: December 17, 2015

Martin R Barash
United States Bankruptcy Judge

1457979

## DigitalSound Production Services, Inc.

## Bidding Procedures

### A.     Bidding Procedures

1.     Bidding Deadline.  Under these Bidding Procedures, Qualified Bids (as defined below) are due from potential bidders (each a **"Bidder"**) and must be received not later than 6 p.m. (Prevailing Pacific time) on December 18, 2015 (**"Bidding Deadline"**) by the Debtor and its legal counsel as follows:  Qualified Bids may be submitted via electronic mail to (1) Charles Klaus at cklaus@sbcglobal.net, (2) Susan K. Seflin at sseflin@ebg-law.com, and (3) Jerrold L. Bregman at jbregman@egb-law.com, unless the Debtor has agreed to other arrangements in writing with such Bidder. The Debtor, in its sole and absolute discretion, may extend the Bidding Deadline for any particular Bidder prior to the Auction (as defined below) subject to the terms of the Stalking Horse APA (as defined below).  The Auction will be held in the event one or more Qualified Bid is received by the Bidding Deadline.

2.     A **"Qualified Bid"** for purposes hereof shall mean a Bidder's executed asset purchase agreement (**"APA"**), submitted as set forth above, in substantially the same form as the asset purchase agreement, dated as of November 30, 2015 (**"Stalking Horse APA"**), between the Debtor and Atomic Lighting LLC ("**Stalking Horse Purchaser**"), and which satisfies each of the following conditions, each as determined by the Debtor in the exercise of its sole and absolute discretion subject to the terms of the Stalking Horse APA:

   a.     Minimum Overbid.  The APA shall provide for a purchase price for the Acquired Assets having a **value of not less than $6,230,242** ("**Minimum Overbid Price**") consisting of $4,095,000 in cash, plus breakup fee of $122,850, plus reimbursement of expenses of $75,000, plus initial overbid amount $57,150 plus the Assumed Liabilities (as defined in the Stalking Horse APA) in the amount of $1,880,242;

   b.     Written & Irrevocable.  The APA shall be in writing and state that it shall remain irrevocable unless and until the Debtor accepts a higher or otherwise better bid, and until such Bidder is not selected as the Back-Up Bidder (as that term is defined below);

   c.     Components.  The overbid shall (i) clearly state the consideration to be paid in cash and the consideration to be paid in Assumed Obligations (as defined below); (ii) identify the executory contracts and unexpired leases ("**Assigned Contracts**") as well as any other obligations to be assumed and assigned to the bidder (together with Assigned Contracts, if any, "**Assumed Obligations**"); (iii) identify the employees by name or position, if any and if known, whom the Bidder anticipates in good faith that it would likely hire upon the consummation of the prospective transaction; and (iv) be clearly marked as a "redline" to show any and all revisions to the Stalking Horse APA;

   d.     Contingencies.  The APA shall not contain any financing or due diligence contingencies;

  e. Deposit. The APA must be accompanied by a deposit in an amount equal to 5% of the cash consideration stated in such Bidder's APA (the **"Deposit"**), to be submitted to the Debtor in the form of a wire transfer of immediately available funds, certified check or cashier's check, which amount shall be deposited into the attorney-client trust account of Ezra Brutzkus Gubner LLP, and received by such law firm on or before the Bidding Deadline; provided that any and all Deposits shall be non-refundable unless and until the Auction has taken place and the Bidder making the Deposit is not selected as either the Successful Bidder (as defined below) or Back-Up Bidder (as defined below), in which case the Deposit will be refunded unless otherwise forfeited as a result of a breach by the Bidder. The Deposit of the successful bidder(s) shall, upon consummation of the successful bid, be credited to the purchase price paid for the Acquired Assets. If any successful bidder fails to consummate the successful bid due to such successful bidder's default, then the Deposit of such successful bidder shall be forfeited to, and retained irrevocably by, the Debtor, and the Debtor shall retain the right to pursue all available remedies. The Deposit of any Bidder whose overbid is not accepted by the Debtor as a Qualified Bid shall be returned to such Bidder within three business days of the Debtor making such determination. The Deposit of any Bidder who submits a Qualified Bid shall be returned within three (3) business days after (i) consummation of the Sale; and (ii) the Auction (except for the back-up bidder(s)'s Deposit which shall be applied or returned as specified above);

  f. Sale "As Is". The APA must acknowledge that the sale contemplated thereunder shall be on an "as-is and where-is" basis, and that such Bidder (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or premises in making its Qualified Bid; and (ii) did not any more so than the Stalking Horse APA rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, regarding the Acquired Assets or the completeness of any information provided in connection with its bid;

  g. No Contingencies. The APA shall acknowledge it is not subject to any due diligence contingencies or financing contingencies of any kind whatsoever;

  h. Demonstrated Capacity. The APA must be accompanied by sufficient and adequate financial and other information to demonstrate, to the Debtor's satisfaction determined in the Debtor's sole and absolute determination, that such Bidder has the presently existing financial ability to consummate the proposed transactions required by its bid and provide adequate assurance of future performance of all Assumed Obligations;

  i. Identity. The APA shall disclose the identity and contact information of each person or entity that will be participating in connection with such bid, and the complete terms of any such participation;

  j. Authorization. The APA shall represent that the Bidder has obtained all necessary internal authorization or approval, including from its board of directors (or

comparable governing body), with respect to the submission, execution, delivery, and closing of its bid and the transactions contemplated thereby;

k.  Prohibition against Collusive Bidding. The APA shall include a written statement acknowledging the prohibition against collusive bidding;

l.  No Fees. The APA shall state that it is not subject to any break-up fee, transaction fee or any similar type of payment from the Debtor to the Bidder; and

m.  Consent to Jurisdiction. The APA shall specify that the Bidder submits to the subject matter and personal jurisdiction of the Bankruptcy Court exercising jurisdiction over the Debtor (**"Bankruptcy Court"** or **"Court"**) with respect to the interpretation and enforcement of these Bidding Procedures and any claims arising from or relating to any APA.

3.  The sale hearing is scheduled for December 22, 2015 at 10:00 a.m. (the **"Sale Hearing"**) (or immediately after the conclusion of an auction if an auction is held).

4.  The Stalking Horse APA is acknowledged to be a Qualified Bid for purposes hereof. In the event the Debtor does not receive any other Qualified Bids, the Debtor will seek Court approval to sell the Acquired Assets to the Stalking Horse Purchaser at the Sale Hearing pursuant to the terms of the Stalking Horse APA.

5.  In the event that the Debtor receives, on or before the Bidding Deadline, one or more Qualified Bids, the Debtor shall hold an auction (the **"Auction"**) pursuant to Section 363 of the Bankruptcy Code at the Bankruptcy Court on December 22, 2015 at 10:00 a.m. At the time of the Auction, the Stalking Horse Purchaser and all Bidders who have submitted a Qualified Bid (each a "**Qualified Bidder**") shall be permitted to overbid for the Acquired Assets in minimum increments of $25,000 over the opening bid, which shall be the highest and best Qualified Bid. Upon completion of the Auction, the Debtor, in its sole and absolute discretion, shall select the highest and/or best bid (the **"Successful Bid"**) and, if the Debtor so determines in its sole and absolute discretion, the highest and best backup bid ("**Back-Up Bid**").

6.  Free and Clear of Any and All Claims and Interests. Except as may be agreed to by the Successful Bidder, all of the rights, title and interest of the Debtor in and to the Acquired Assets to be acquired as part of the proposed sale shall be sold free and clear of liens, claims, and encumbrances to the extent permitted by Section 363(f) of the Bankruptcy Code, and all associated contract rights shall be assigned, to the extent possible, to the Successful Bidder pursuant to Section 365 of the Bankruptcy Code.

7.  Evaluation of Bids at Auction. The Debtor shall evaluate all bids in its sole and absolute discretion. Bids will be valued based upon several factors as weighted and applied by the Debtor in its sole and absolute discretion, including, without limitation, items such as (i) the purchase price and the net value (including assumed liabilities and other obligations to be assumed by the Bidder) provided by such bid; (ii) the relative ability of the Bidder to consummate the transactions contemplated by its bid; (iii) the nature and extent of any proposed revisions to

the Stalking Horse APA; (iv) the effect of the proposed sale on the Debtor's operations and employees; and (v) other factors affecting the speed, certainty, and value of the transactions contemplated by such bid.

8.   Time and Date of Auction.  The Auction, if any, shall occur on December 22, 2015 at 10:00 a.m. (Prevailing Pacific time), at the United States Bankruptcy Court, Courtroom 303 located at 21041 Burbank Blvd., Woodland Hills, California 91367.

9.   Notices.  The Debtor shall serve notice of the Sale Hearing on (i) all Potential Bidders of whom Debtor is aware; (ii) Debtor's 20 largest unsecured creditors; (iii) counsel to the Creditors' Committee, if any; (iv) all relevant federal, state and local taxing authorities; (v) all parties asserting or known to hold a lien on or security interest in any of the Acquired Assets; (vi) all counter parties to executory contracts and unexpired leases; (vii) the U.S. Trustee; (viii) both shareholders of the Debtor's stock, inclusive of the minority shareholder who is serving as the DIP lender; (ix) any entities that have filed a request for service of filings pursuant to Bankruptcy Rule 2002; and (x) all other parties entitled to notice under Bankruptcy Rule 2002.

10.   Auction Procedures.  The Auction shall be conducted in accordance with the following procedures (the **"Auction Procedures"**):

   a.   The Auction will be conducted in an open and fair manner as determined by the Debtor and the Bankruptcy Court; provided, that any such other Auction procedures shall not be inconsistent with any order of the Bankruptcy Court or the Stalking Horse APA;

   b.   Each participating Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale;

   c.   The Debtor, in its sole and absolute discretion, may approve joint bidding that is openly disclosed to the Debtor (except as modified on the record to allow VER to submit a joint bid);

   d.   The Auction shall be governed by such other procedures as are announced by the Debtor, in its sole and absolute discretion, in consultation with the Committee, if any, from time to time on the record at the Auction; provided, that any such other Auction procedures shall not be inconsistent with any order of the Bankruptcy Court or the Stalking Horse APA;

   e.   Bidding shall continue until such time as the highest and best bid is determined by the Debtor in its sole and absolute discretion in consultation with the Committee, if any;

   f.   The Debtor may recess the Auction at any time and from time to time in its sole and absolute discretion; and

11. The Successful Bidder shall take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been a demonstration of adequate assurance of future performance under the Assigned Contracts, such as furnishing affidavits, financial information and other documents or information for filing with the Bankruptcy Court if necessary (as determined by the Debtor) and making knowledgeable representatives available to testify before the Bankruptcy Court.

12. Back-Up Bidders. At the conclusion of the Auction, the Debtor may designate a Back-Up Bidder or multiple Back-Up Bidders. If a Back-Up Bidder is selected, such Back-Up-Bidder's Deposit shall be released upon the later to occur of (a) the closing of a transaction with the Successful Bidder, or other Back-Up Bidder; or (b) twenty-two (22) days after the entry of an order approving the Debtor's Sale of the Acquired Assets. If the Successful Bidder does not close the transaction for any reason, then the Back-Up Bidder's Deposit shall be non-refundable and the Debtor shall close the transaction upon the terms of such Back-Up Bidder's APA as it may have been improved at the Auction.

13. Closing. The closing for the sale of the Acquired Assets to the Successful Bidder or Back-Up Bidder (the **"Closing"**) shall be held in the office of counsel for the Debtor, or such other location as is agreed to by the parties, no later than the Closing Deadline unless expressly agreed to in writing by the Debtor and the Successful Bidder or Back-Up Bidder, as applicable.

B. **Assumption and Assignment of Executory Contracts and Unexpired Leases**

1. The procedures set forth below shall govern the assumption and assignment of the Assigned Contracts that may be assumed and assigned in connection with a sale of the Acquired Asset ("**Assumption Procedures**").

2. Cure Notice. The Debtor shall file with the Bankruptcy Court and serve via first-class mail, electronic mail or overnight delivery, the Cure Notice on all non-Debtor counterparties to the Assigned Contracts and their counsel (if known) by no later than December 9, 2015. The Cure Notice shall (i) identify the Assigned Contracts, (ii) provide the Debtor's good faith estimates of the corresponding cure amounts required to cure all outstanding defaults under each of the Assigned Contracts (each, a "**Cure Amount**"), and (iii) include the deadline by which any counterparty to the Contract or Lease may file an objection to the proposed assumption and assignment and/or the Cure Amount proposed with respect thereto, and the procedures relating thereto; *provided, however*, that service of a Cure Notice shall not constitute an admission that such Contract or Lease is an executory contract or unexpired lease.

3. Adequate Assurance. Upon request of the non-Debtor counterparty and by electronic mail, the Debtor shall serve upon such party the evidence of adequate assurance of future performance with respect to the relevant Assigned Contracts(s) provided by the Stalking Horse Purchaser or Successful Bidder(s), including the legal name of the proposed assignee, the proposed assignee's financial ability to perform under the Assumed Contract(s) and the contact information for the person with the proposed assignee whom counterparties may contact if they wish to obtain further information regarding such Stalking Horse Purchaser or Successful Bidder. The Debtor may but is not required to file such evidence with the Bankruptcy Court.

      4.      Objections. Objections, if any, to the proposed assumption and assignment or the Cure proposed with respect to any of the Assigned Contracts, must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and any order of the Bankruptcy Court; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amount, the alleged correct Cure Amount, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Bankruptcy Court by the Sale Objection Deadline (or such later deadline as may be stated in the Cure Notice).

      5.      Dispute Resolution. Any objection to the proposed assumption and assignment of any of the Assigned Contracts or related cure proposed in connection with the Sale that remains unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at a later date as fixed by the Bankruptcy Court) with no additional notice of such hearing to be required to be filed or otherwise provided); *provided, however*, that with respect to any Assumed Contract to which such objection pertains solely to the Cure Amount proposed with respect thereto, the Debtor may seek at the Sale Hearing to assume such Assumed Contract and assign it to the Successful Bidder; provided further, however, that the Debtor or the Successful Bidder, as applicable, must segregate funds from the net proceeds of the applicable sale equal to the undisputed portion of the applicable Cure Amount pending the resolution of such dispute by the Bankruptcy Court or by agreement of the parties, and pay any amount owed promptly to the applicable counterparty upon such resolution.

      **6.**      **Any party who fails to timely file an objection to its scheduled Cure Amount listed on the Cure Notice or to the assumption and assignment of an Assumed Contract (a) shall be forever barred from objecting thereto, including, without limitation, (i) making any demands for additional Cure Amounts or monetary compensation on account of any alleged defaults against the Debtor, it's estate, the Stalking Horse Purchaser or other Successful Bidder(s) arising from the Auction, if any, with respect to any such Assumed Contract, and (ii) asserting that the Stalking Horse Purchaser or other Successful Bidder(s) has not provided adequate assurance of future performance as of the date of the Sale Order and (b) shall be deemed to consent to the Sale.**

      7.      The Debtor, after consultation with the Committee, if any, reserves the right to implement additional procedural rules, provided that such lack of conformity is not material and is not inconsistent with any order of the Bankruptcy Court or the APA.

      8.      All Interested Parties (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or the Sale) to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to any of the foregoing matters.

# # #