STEVEN T. GUBNER - Bar No. 156593
SUSAN K. SEFLIN - Bar No. 213865
JERROLD L. BREGMAN - Bar No. 149896
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:    sgubner@ebg-law.com
          sseflin@ebg-law.com
          jbregman@ebg-law.com

Proposed Attorneys for Chapter 11 Debtor and
Debtor in Possession

FILED & ENTERED

DEC 24 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Bever        DEPUTY CLERK

CHANGES MADE BY COURT

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No. 1:15-bk-13952-MB |
| DigitalSound Production Services, Inc., | Chapter 11 |
| Debtor. | **ORDER AUTHORIZING (I) THE SALE OF ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (II) THE DEBTOR TO ENTER INTO AND PERFORM ITS OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT AND CERTAIN ANCILLARY AGREEMENTS; (III) THE DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF** |

**Hearing:**
Date:    December 22, 2015
Time:    10:30 a.m.
Place:    Courtroom 303
         21041 Burbank Blvd.
         Woodland Hills, CA 91367

1

On December 22, 2015 at 10:30 a.m. a hearing (the "Hearing") was held before the Honorable Martin R. Barash, United States Bankruptcy Judge for the Central District of California, for the Court to consider the *Notice of and Emergency Motion for (I) An Order (A) Approving Bidding Procedures in Connection with Sale of the Debtor's Assets, (B) Scheduling Hearing to Consider the Sale, and (C) Approving Form and Manner of Notice Thereof; and (II) an Order Authorizing and Approving (A) the Sale of Substantially All of the Debtor's Assets and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; Memorandum of Points And Authorities* [Doc. # 2] (the "Motion") filed by Digitalsound Production Services, Inc., the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor").[1] Appearances were made as noted on the record of the Hearing.

The Bankruptcy Court having entered an order approving the bidding procedures and granting certain related relief by order entered on December 17, 2015 [Doc. # 56] (the "Bidding Procedures Order"); and an auction having been conducted **on December 22, 2015** in accordance with the Bidding Procedures Order (the "Auction"); and Full Throttle Films LLC, doing business as Video Equipment Rental ("VER") and Production Resource Group, L.L.C. ("PRG" and, together with VER, "Purchaser")  having submitted the highest and best offer for the Acquired Assets pursuant to the terms of the Purchaser's concurrently submitted asset purchase agreements, as amended as reflected on the record of the Sale Hearing ("APA"); and the Court having conducted a hearing on the Motion on December 22, 2015 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; each of the Debtor, the Purchaser, Atomic Lighting LLC (the "Stalking Horse"), the landlord A&M Pierce Property, LLC ("Landlord"), and the United States Trustee ("UST") were represented at the Sale Hearing; and the Court having reviewed and considered the Motion, the APA, the Bidding Procedures Order, the record of the hearing before the Court at which the Bidding Procedures Order was approved, as well

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion or the APA (as defined herein), as appropriate.  The definitions set forth in the APA control to the extent there is a conflict between the terms defined in the Motion and the APA.

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

1   as the testimony of the Purchaser's principals having been accepted into evidence at the Sale

2   Hearing based on offers of proof made on the record of the Sale Hearing, with the witnesses present

3   in Court, to which there were no objections; the parties having entered into binding stipulations,

4   clarifications and amendments of the Purchaser's APA and also of the Stalking Horse's APA, and

5   other representations of the parties made by their respective counsel during the Sale Hearing as

6   reflected on the record thereof; there being no objections to the approval of the Acquired Assets to

7   the Purchaser; and all interested parties and all responses to the Motion having been duly noted in

8   the record of the Sale Hearing; and upon the record of the Sale Hearing, and having heard statements

9   of counsel and the evidence presented at the Sale Hearing in support of the relief requested in the

10  Motion; and upon all of the proceedings conducted before the Court, and all objections and

11  responses to the relief requested in the Motion having been heard and overruled on the merits; and it

12  appearing the due notice of the Motion, the APA, the Bidding Procedures Order and the Auction

13  having been provided; and it appearing that the relief requested in the Motion is in the best interests

14  of the Debtor, its estate, its creditors and all other parties in interest; and it appearing that the Court

15  has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in

16  the Motion and at the Sale Hearing establish just cause for the relief granted herein; and the parties

17  (consisting of the Debtor, the Purchaser, the Stalking Horse, the Landlord, and the UST), through

18  counsel, each having approved the form of this Order as reflected in **Exhibit 1** hereto; and after due

19  deliberation thereon,

20  **THE COURT EXPRESSLY FINDS AS FOLLOWS**:[2]

21  <u>**Jurisdiction, Venue and Final Order**</u>

22      A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §

23  1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District

24  and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

25

26  ───────────────────

27  [2] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the
Motion are hereby incorporated to the extent not inconsistent herewith.

28

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedures, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of this Order as set forth herein.

### Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts

C.      On November 30, 2015 (the "Petition Date") the Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). Since the Petition Date, the Debtor has continued in possession and management of its business and property as a debtor-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

D.      As evidenced by the affidavit of service previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the APA and the transactions contemplated by the Motion and the APA (collectively, the "Transactions") has been provided in accordance with Sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Bankruptcy Rule 9075-1.  The Debtor has complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, the APA and the Transactions as required by the Bidding Procedures Order. The aforementioned notice is good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Transactions is or shall be required.

E.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

F.      In accordance with the Bidding Procedures Order, the Debtor has served a notice (as amended, modified or otherwise supplemented from time to time, the "Cure Notice") of the potential assumption and assignment of the Assigned Contracts and of the Cure Amounts upon each non-Debtor counterparty to an Assigned Contract. As evidenced by the affidavit of service previously filed with this Court, and based on the representations of Debtor's counsel at the Sale Hearing, the

4

service and provision of the Cure Notice was good, sufficient and appropriate under the circumstances and no further notice is or shall be required in respect of assumption and assignment of the Assigned Contracts or establishing a Cure Amounts for the respective Assigned Contracts.

G.    Non-Debtor counterparties to the Assigned Contracts have had an adequate opportunity to object to or to be heard regarding assumption and assignment of the applicable Assigned Contracts and the Cure Amounts set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of Section 365(c)(1) of the Bankruptcy Code). The deadline to file an objection to the assumption and assignment to the Purchaser of any Assigned Contract (a "Contract Objection") has expired, and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties. To the extent that any such party did not timely file a Contract Objection by the Contact Objection deadline, such party is deemed to have consented to (i) the assumption and assignment of the Assigned Contract pursuant to the terms of this Order; and (ii) the proposed Cure Amounts set forth on the Cure Notice.

H.    Following service of the Cure Notice, the Debtor and the Landlord reached an agreement on the Cure Amount to be paid to the Landlord by the Debtor in accordance with this Order (the "Landlord Cure Amount") which amount shall become binding on the Debtor and the Landlord conditioned upon (i) the Closing, (ii) assignment of Landlord's lease to Purchaser, including execution of such contemplated additional lease documentation as has been separately agreed by and between Landlord and Purchaser, and (iii) Landlord's receipt from the Debtor of the Landlord Cure Amount.

**Marketing Process**

I.    As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtor and its representatives have complied in all material respects with the Bidding Procedures Order. The Debtor and its professionals have,

5

under the circumstances, adequately and appropriately marketed the Acquired Assets. The Auction was duly noticed and conducted in a diligent, non-collusive, fair and good faith manner, and the Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to qualify as a bidder, participate in the Auction and to make a higher or otherwise better offer to purchase the Acquired Assets.

J.    The Purchaser is the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order and pursuant to the terms of the APA and this Order. The Purchaser and its representatives have complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the APA, and the sale and the APA likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

### Highest or Otherwise Best Offer; Business Judgment

K.    The APA including the form and total consideration to be realized by the Debtor under the APA, (i) constitutes the highest and best offer received by the Debtor for the Acquired Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtor, its estate, its creditors and all other parties in interest.

L.    Consistent with all fiduciary duties, the Debtor has demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performances of its obligations under the APA, including, but not limited to, the fact that (i) the consideration provided by the Purchaser under the APA will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative, including a separate liquidation of the Acquired Assets; and (ii) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries of creditors will be diminished.

### Good Faith; Arm's Length Sale

M.    The sales process engaged in by the Debtor, the Purchaser, and the Stalking Horse, including without limitation, the Bidding Procedures set forth in the Bidding Procedures Order, the negotiation of the APA, and the submission of a joint bid by VER and PRG as the Purchaser, was at arms' length, non-collusive, in good faith, and substantively and procedurally fair to all parties. The

6

Purchaser has not engaged in any fraud or collusion with the Debtor or any other bidder to control the sale price, nor has the Purchaser attempted to take unfair advantage of other bidders.

N.    The Debtor and the Purchaser and their respective representatives have complied, in good faith, in all respects with the Bidding Procedures Order.

O.    The Purchaser is a good faith buyer within the meaning of Section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Neither the Debtor nor the Purchaser nor the Stalking Horse has engaged in any conduct that would either prevent the application of Section 363(m) of the Bankruptcy Code or trigger the application of Section 363(n) of the Bankruptcy Code.

P.    The APA was not entered into, and neither the Debtor nor the Purchaser has entered into the APA or proposes to consummate the Transactions, for the purpose of hindering, delaying or defrauding the Debtor's present or future creditors.  Neither the Debtor nor the Purchaser is entering into the APA, or proposing to consummate the Transactions, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia.

Q.    The form and total consideration to be realized by the Debtor under the APA constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Acquired Assets.

**Corporate Authority**

R.    The Debtor (i) has full corporate or other power to execute, deliver and perform its obligations under the APA and all other Transactions contemplated thereby, and entry into the APA has been duly and validly authorized by all necessary corporate or similar action; (ii) has all of the corporate or other power and authority necessary to consummate the Transactions contemplated by the APA; and (iii) has taken all actions necessary to authorize and approve the APA and the

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

1  Transactions contemplated thereby. No consents or approvals, other than those expressly provided

2  for herein or in the APA, are required for the Debtor to consummate such Transactions.

3  **Section 363 Is Satisfied**

4  S.    **Based on the record before the Court,** ~~The Debtor has, to the extent necessary,~~

5  ~~satisfied the requirements of section 363(b)(1) of the Bankruptcy Code. Accordingly,~~ appointment

6  of a consumer privacy ombudsman pursuant to Sections 363(b)(1) or 332 of the Bankruptcy Code is

7  not required with respect to the relief requested in the Motion.

8  T.    ~~The Acquired Assets constitute property of the Debtor's estate and e~~ **E**xclusive title

9  ~~thereto~~ **to all of the Debtor's property interests as of the Petition Date** is ~~presently~~ vested in the

10 Debtor's estate within the meaning of Section 541(a) of the Bankruptcy Code. **It appears that the**

11 **Acquired Assets were property of the Debtor as of the Petition Date, and therefore property of**

12 **the Debtor's estate.**

13 U.    The sale of all Acquired Assets to the Purchaser under the terms of the APA meets

14 the applicable provisions of Section 363(f) of the Bankruptcy Code such that the sale of the

15 Acquired Assets will be free and clear of any and all Claims (as defined below), and except as

16 expressly provided in the APA with respect to Permitted Liens and Assumed Liabilities, the (i)

17 transfer of the Acquired Assets to the Purchaser and (ii) assumption and/or assignment of the

18 Assigned Contracts to the Purchaser will be free and clear of all Claims and will not subject the

19 Purchaser or any of the Purchaser's assets to any liability for any Claims whatsoever (including,

20 without limitation, under any theory of equitable law, antitrust, setoff, or successor or transferee

21 liability). All holders of Claims who did not object, or withdrew their objections to the Transactions,

22 are deemed to have consented to the Transactions pursuant to Section 363(f)(2) of the Bankruptcy

23 Code. All holders of Claims are adequately protected – thus satisfying Section 363(e) of the

24 Bankruptcy Code – by having their Claims, if any, attach to the cash proceeds of the Transactions

25 ultimately attributable to the property against or in which they assert a Claim or other specifically

26 dedicated funds or assets of the estate on which they have liens, in the same order of priority and

27 with the same validity, force and effect that such Claim holder had prior to the Transactions, subject

28

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

to any rights, claims and defenses of the Debtor or its estate, as applicable, or as otherwise provided herein; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Transactions.

V.    The Purchaser would not have entered into the APA and would not consummate the Transactions, thus adversely affecting the Debtor, its estate, creditors, employees and other parties in interest, if the sale of the Acquired Assets was not free and clear of all Claims or if the Purchaser would, or in the future could, be liable for any Claims, including, without limitation and as applicable, certain liabilities that expressly are not assumed by the Purchaser as set forth in the APA or in this Order.  The Purchaser asserts that it will not consummate the Transactions unless the APA specifically provides, and this Court specifically orders, that none of the Purchaser, its assets, or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any (i) Claim; or (ii) any successor or transferee liability for the Debtor other than Permitted Liens and Assumed Liabilities.

W.    The Purchaser is not a successor to the Debtor or its estate by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of the Debtor or its estate, except as otherwise expressly provided in the APA or this Order.  The Purchaser is not a continuation of the Debtor or its estate and there is no continuity between the Purchaser and the Debtor.  The Purchaser is not holding itself out to the public as a continuation of the Debtor or its estate and the Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor.

X.    The transfer of the Acquired Assets to the Purchaser under the APA will be a legal, valid and effective transfer of all of the legal, equitable and beneficial right, title and interest **of the Debtor and its estate,** in and to the Acquired Assets, free and clear of all Claims (other than Permitted Liens and Assumed Liabilities).  The transfer of the Acquired Assets to the Purchaser will vest the Purchaser with good and marketable title to **Debtor's interests and the Debtor's estate's interest in** the Acquired Assets.

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

Y.      There is no legal or equitable reason to delay the Transactions. The Transactions must be approved and consummated promptly in order to preserve the value of the Debtor's assets.  All factual predicates to the waiver of any stay of this Order under Bankruptcy Rules 6004(h) and 6006(d) have been satisfied.

Z.      The Debtor has demonstrated both (i) good, sufficient and sound business judgment, purposes and justifications; and (ii) compelling circumstances for the Transactions pursuant to Section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the immediate consummation of the Transactions, the value of the Debtor's assets will be harmed.  To maximize the value of Acquired Assets, it is essential that the Transactions occur within the timeframe set forth in the APA.  Time is of the essence in consummating the Transactions.  Entry into the APA and consummation of the Transactions do not constitute a <u>sub rosa</u> chapter 11 plan.

<u>Assumption and Assignment of the Assigned Contracts</u>

AA.      The assumption and assignment of the Assigned Contracts (as such Assigned Contracts may be amended, supplemented or otherwise modified prior to assumption and assignment without further order of the Court with the consent of the Debtor, the contract counterparty and the Purchaser) that are designated for assumption and assignment pursuant to the terms of this Order and the APA is integral to the APA, does not constitute unfair discrimination, is in the best interest of the Debtor, its estate, its creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

BB.      The Debtor has met all requirements of Section 365(b) of the Bankruptcy Code for each of the Assigned Contracts.  The Debtor, pursuant to the APA, has (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the Assigned Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to each party resulting from a default prior to the Closing under any of the Assigned Contracts, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code.  The parties to each of the

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

Assigned Contracts have consented to assignment of such Assigned Contracts where consent is required by applicable law. Each of the Assigned Contracts is free and clear of all Claims against the Purchaser.

CC.    The Purchaser has demonstrated adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of Sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to Section 365(f) of the Bankruptcy Code, the Assigned Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contract or other restrictions prohibiting their assignment or transfer. Notwithstanding any provision to the contrary in the APA, and as stated on the record at the Sale Hearing, Landlord's unexpired lease (the "Pacoima Lease") shall be assigned to and assumed by Video Equipment Rentals Holdings, LLC, the Purchaser entity that provided adequate assurance information to the Landlord prior to the Sale Hearing.

DD.    No monetary or non-monetary defaults exist in the Debtor's performance under the Assigned Contracts as of the date of this Order, other than the failure to pay amounts equal to the Cure Amounts, the defaults under the Pacoima Lease which shall be resolved as set forth in this Order, or defaults that are not required to be cured as contemplated in Section 365(b)(1)(A) of the Bankruptcy Code. In accordance with the terms set forth in the APA and this Order, the Debtor shall pay the Cure Amounts for each of the Assigned Contracts.

EE.    The record of the Sale Hearing sets forth Landlord's contention that the certain standby letter of credit issued by Union Bank to Landlord as Beneficiary in connection with Debtor's occupancy of Landlord's real property, and identified as Irrevocable Letter of Credit S326938M (the "Letter of Credit") is not property of the Debtor's estate and thus is not subject to the jurisdiction of this Court. The Letter of Credit is an "Excluded Asset" as defined in the APA. The record further reflects the Landlord's agreement to effect a release of the Letter of Credit by promptly notifying Union Bank to cancel same, and to return the Debtor's security deposit provided in the Pacoima Lease to the Debtor, after each and all of the following has occurred: (i) the Closing;

11

1   (ii) the Pacoima Lease has been assigned to and assumed by the Purchaser, including execution of

2   contemplated additional lease documentation as agreed by and between the Purchaser and the

3   Landlord; (iii) the Debtor has paid the Landlord Cure Amount; and (iv) the Purchaser has provided

4   the Landlord with the required security deposit for its performance under the Pacoima Lease.

5   **Amendment of the APA**

6        FF.    The terms and conditions of the asset purchase agreement provided, respectively, by

7   each of VER, PRG, and the Stalking Horse, are deemed to have been amended and clarified to the

8   extent of the parties' agreements as reflected on the record of the Sale Hearing whether or not any

9   such particular amendment or clarification is recited in this Order.

10   **THEREFORE, IT IS HEREBY ORDERED THAT**:

11   **General Provisions**

12        1.    The Motion is granted to the extent provided herein.

13        2.    Any objections to the Motion or the relief requested therein that have not been

14   withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled on

15   the merits and denied with prejudice.  All persons and entities given notice of Motion that failed to

16   timely object thereto are deemed to consent to the relief sought therein, including, without limitation,

17   all non-Debtor counterparties to the Assigned Contracts.

18        3.    The findings and conclusions set **forth herein** ~~for there in~~ constitute the Court's

19   findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

20   proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the findings of fact constitute

21   conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law

22   constitute findings of fact, they are adopted as such.

23   **Approval of the APA and Back-Up Bid**

24        4.    The APA (collectively with all related agreements, amendments (including, without

25   limitation, the amendments agreed to as reflected on the record of the Sale Hearing), documents,

26   instruments and all exhibits, schedules and addenda to any of the foregoing), all the terms and

27   conditions thereof, and consummation of all of the Transactions contemplated therein, are authorized

28

12

and approved in all respects pursuant to Section 363(b) of the Bankruptcy Code. The failure

specifically to include any particular provision or amendment of the APA in this Order shall not

diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA,

as amended, be authorized and approved in its entirety.

5.    The Debtor and its respective officers, employees and agents are authorized to (a)

take any and all actions necessary, appropriate or reasonably requested by the Purchaser to perform,

consummate, implement and close the Transactions, including without limitation, (i) the sale of all

Acquired Assets to the Purchaser in accordance with the terms and conditions set forth in the APA

and this Order; and (ii) executing, acknowledging and delivering such deeds, assignments,

conveyances and other assurance documents and instruments of transfer and taking any action for

purposes of assigning, transferring, granting, conveying and confirming to the Purchaser, or reducing

to possession, the Acquired Assets; and (b) to assume and assign any and all Assigned Contracts.

The Debtor is further authorized to pay, without further order of this Court, whether before, at or

after the Closing, any amounts that become payable by the Debtor pursuant to the APA (and related

agreements executed in connection with and required by the Transactions), together with other fees

and expenses approved by the Court.  For the avoidance of doubt, the Debtor is authorized and

directed to pay (i) the Breakup Fee (as defined in the Bidding Procedures Order) in the amount of

$122,850 plus the Expense Reimbursement (as defined in the Bidding Procedures Order) in the

amount of up to $75,000 to the Stalking Horse immediately from the proceeds of the sale upon the

Closing of the sale to the Purchaser, and (ii) the Landlord Cure Amount of $96,071.77 to the

Landlord immediately from the proceeds of the sale upon the Closing of the sale to the Purchaser.

All such amounts shall (x) constitute allowed administrative expenses of the Debtor's estate under

Sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (y) be treated with such priority ~~as~~ **even** if

the Chapter 11 Case converts to a case under chapter 7 of the Bankruptcy Code; and (z) not be

discharged, modified or otherwise affected by any reorganization plan for the Debtor, except by

written agreement with the Purchaser (such agreement to be provided in the Purchaser's sole

discretion), as applicable.

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

6.     The Stalking Horse's asset purchase agreement, as amended by the agreements between the parties as reflected on the record of the Sale Hearing (the "Stalking Horse APA"), was designated by the Debtor and is approved as the Back-Up Bid; provided, however, that such Back-Up Bid shall be deemed to be terminated and of no force or effect unless, by January 7, 2016 (as such date may be extended with the Stalking Horse's written consent, at its sole discretion), the Debtor has designated such Back-Up Bid to be the winning bid.  The Stalking Horse's deposit shall be released to the Stalking Horse forthwith if the Stalking Horse is not designated as the Successful Bidder on or before January 7, 2016.  In the event the Debtor does designate the Back-Up Bid as the winning bid in accordance with the foregoing, in the event the Purchaser's APA is terminated for any reason, then the Stalking Horse shall be deemed to be the "Purchaser" for purposes of this Order, the Stalking Horse APA shall be deemed to be the "APA" for purposes of this Order, and the parties may proceed to effect the Closing without any further order of this Court, with notice to be provided only to the Purchaser, the Stalking Horse, the Landlord, and the UST, with no additional notice to be required or provided.  For the avoidance of doubt, all findings of fact and conclusions of law shall apply to the Stalking Horse and the Back-Up Bid with the same force and effect as to the Purchaser and the APA.

7.     All persons and entities are prohibited and enjoined from taking any action to prevent, adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtor to transfer (a) the Assigned Contracts to the Purchaser, (b) the Acquired Assets to the Purchaser, in accordance with the APA and this Order, and (c) to the Purchaser at or after the Closing any cash or other property of the Purchaser that is held by Debtor as bailee for the Purchaser.

**Sale and Transfer Free and Clear of Claims**

8.     Except as otherwise expressly provided in the APA and the terms of this Order with respect to the Permitted Liens and Assumed Liabilities, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be sold free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including Section 101(37) thereof), liabilities,

14

interests, rights and encumbrances, including, without limitation, the following:  all mortgages,

restrictions (including, without limitation, any restriction on voting rights, transfer rights, claims for

receipt of income or other exercise of any attributes of ownership), hypothecations, charges,

indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests,

equity interests, conditional sale rights or other title retention agreements, pledges, judgments,

demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment

rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration

rights, product liability claims, alter-ego claims, environmental rights and claims (including without

limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights

and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or

foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in

connection with any agreements, acts, or failure to act, reclamation claims, obligation claims,

demands, guaranties, rights of licensees or sublicensees (if any) under Section 365(n) of the

Bankruptcy Code or any similar statute, rights of tenants and subtenants (if any) under Section

365(h) of the Bankruptcy Code or any similar statute, and all other matters of any kind or nature,

whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed

or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or

non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed

or undisputed, whether arising prior to or subsequent to the commencement of this Bankruptcy Case

(but, for the avoidance of doubt, in each case arising from the ownership of the Acquired Assets or

the operation of the Business prior to the Closing Date), and whether imposed by agreement, law,

equity or otherwise, including claims otherwise arising under any theory, law or doctrine of

successor liability or related theories (all of the foregoing collectively being referred to in this Order

as "Claims", and as used in this Order, the term "Claims" include, without limitation, any and all

"claims" as that term in defined and used in the Bankruptcy Code, including Section 101(5) thereof),

with all such Claims to attach to the cash proceeds of the Transactions to be received by the Debtor

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

1   with the same validity, force, priority and effect which they now have as against the Acquired

2   Assets, subject to any claims and defenses the Debtor may possess with respect thereto.

3       9.      At Closing, all of the Debtor's right, title and interest in and to, and possession of, the

4   Acquired Assets shall be immediately vested in the Purchaser, pursuant to Sections 105(a), 363(b),

5   363(f) and 365 of the Bankruptcy Code free and clear of any and all Claims, except for Permitted

6   Liens and Assumed Liabilities.  Such transfer shall constitute a legal, valid, binding and effective

7   transfer of, and shall vest the Purchaser with good and marketable title to, the **Debtor's and**

8   **Debtor's estate's** Acquired Assets.  All persons or entities, presently or on or after the Closing, in

9   possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired

10  Assets to the Purchaser or its designee on the Closing or at such time thereafter as the Purchaser may

11  request.

12      10.     This Order is and shall be binding upon and govern the acts of all entities, including,

13  without limitation, all filing agents, filing officers, title agents, title companies, recorders of

14  mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other

15  intellectual property, administrative agencies, governmental departments, secretaries of state, federal

16  and local officials and all other persons and entities who may be required by operation of law, the

17  duties of their office or contract, to accept, file, register or otherwise record or release any

18  documents or instruments, and each of the foregoing persons and entities is hereby authorized and

19  directed to accept for filing any and all of the documents and instruments necessary and appropriate

20  to consummate the Transactions contemplated by the APA.

21      11.     Except as otherwise expressly provided in the APA and this Order with respect to

22  Permitted Liens and Assumed Liabilities, all persons and entities (and their respective successors

23  and assigns), including, but not limited to, all debt security holders, equity security holders,

24  affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees,

25  trade creditors, litigation claimants and other creditors holding Claims against the Debtor or the

26  Acquired Assets arising under or out of, in connection with, or in any way relating to, the Debtor, the

27  Debtor's predecessors or affiliates, the Acquired Assets, the ownership, sale or operation of the

28

1    Acquired Assets and the Business prior to Closing or the transfer of the Acquired Assets to the

2    Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting such Claims

3    against the Purchaser, its successors or assigns, its property or the Acquired Assets.  Following the

4    Closing, no holder of any Claim shall interfere with the Purchaser's title to or use and enjoyment of

5    the Acquired Assets based on or related to any such Claim, or based on any action the Debtor may

6    take in the Chapter 11 Case.

7           12.    If any person or entity that has filed financing statements, mortgages, mechanic's

8    Claims, *lis pendens* or other documents or agreements evidencing Claims against or in the Acquired

9    Assets shall not have delivered to the Debtor prior to the Closing of the Transactions, in proper form

10   for filing and executed by the appropriate parties, termination statements, instruments of satisfaction,

11   releases of all Claims (other than the Permitted Liens and Assumed Liabilities) that the person or

12   entity has with respect to the Acquired Assets; (a) the Debtor is hereby authorized to cause the

13   execution and filing of such statements, instruments, releases and other documents on behalf of the

14   person or entity with respect to the Acquired Assets; (b) the Purchaser is hereby authorized to file,

15   register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise

16   recorded, shall constitute conclusive evidence of the release of all such Claims against the Purchaser

17   and the applicable Acquired Assets; and (c) the Purchaser may seek in this Court or any other court

18   to compel appropriate parties to execute termination statements, instruments of satisfaction, and

19   releases of all such Claims with respect to the Acquired Assets.  This Order is deemed to be in

20   recordable form sufficient to be placed in the filing or recording system of each and every federal,

21   state, or local government agency, department or office.  Notwithstanding the foregoing, the

22   provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of

23   Claims shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute

24   or file releases, termination statements, assignments, consents or other instruments in order to

25   effectuate, consummate and implement the provisions of this Order.

26          13.    To the maximum extent permitted under applicable law, the Purchaser shall be

27   authorized, as of the Closing Date, to operate under any license, permit, registration and

28

17

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

governmental authorization or approval of the Debtor with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

14.     No governmental unit (as defined in Section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Acquired Assets on account of the filing or pendency of the Chapter 11 Case or the consummation of the Transactions to the extent that any such action by a governmental unit or any representative thereof would violate Section 525 of the Bankruptcy Code.

## No Successor or Transferee Liability

15.     The Purchaser shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions contemplated by the APA, or the transfer or operation of the Acquired Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtor (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor or the enterprise(s) of the Debtor, including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), WARN, CERCLA, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq*, (the "NLRA"), environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtor for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under

18

any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

16.    Other than as expressly set forth in the APA and this Order with respect to Permitted Liens and Assumed Liabilities, the Purchaser shall not have any responsibility for (a) any liability or other obligation of the Debtor or related to the Acquired Assets or (b) any Claims against the Debtor or any of their predecessors or affiliates.

17.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser or its assets (including the Acquired Assets), with respect to any (a) Claim (other than a Permitted Lien or Assumed Liability) or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b):  (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien, claim, interest or encumbrance; (iv) asserting any setoff, right of subrogation or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

## Good Faith; Arm's Length Sale

18.    The joint bid by VER and PRG as the Purchaser and the APA have been negotiated and executed, and the Transactions contemplated by the APA are and have been undertaken, by Debtor and the Purchaser, and their respective representatives at arm's length, without collusion and in "good faith," as that term is used in Section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transactions (including the assumption and assignment of the Assigned

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

Contracts), unless such authorization and consummation of the sale are duly and properly stayed pending such appeal.  The Purchaser is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code, and the sale shall not be subject to avoidance under Section 363(n) of the Bankruptcy Code.

19.     Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Transactions to be avoided, or damages or costs, to be imposed, under Section 363(n) of the Bankruptcy Code.  The consideration provided by the Purchaser for the Acquired Assets under the APA is fair and reasonable, and the Transactions may not be avoided under Section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts**

20.     Pursuant to Section 105(a) and 365 of the Bankruptcy Code, the Debtor is authorized and directed to assume and assign to the Purchaser each of the Assigned Contracts upon the Closing of the Transactions, free and clear of all Claims (other than Permitted Liens and Assumed Liabilities).  The payment of the Cure Amounts and the Landlord Cure Amount by the Debtor (a) cures all monetary defaults existing thereunder as of the Closing Date; (b) compensates the applicable non-Debtor counterparties for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Assigned Contracts by the Debtor and the assignment of the Assigned Contracts to the Purchaser as set forth herein, constitutes adequate assurance of future performance thereof.

21.     To the extent that any counterparty to an Assigned Contract did not timely file a Contract Objection by the Contract Objection deadline, such counterparty is deemed to have consented to (i) the assumption and assignment of the Assigned Contract pursuant to the terms of this Order; and (ii) the proposed Cure Amounts set forth on the Cure Notice.  The parties to each of the Assigned Contracts have consented to assignment of such Assigned Contracts where consent is required by applicable law.

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

22.    Any provision in any Assigned Contract that prohibits or conditions the assignment of such Assigned Contract or allows the non-Debtor counterparty to such Assigned Contract to impose any penalty, fee, rent increase, profit sharing arrangement or other condition on renewal or extension, or to modify any term or condition upon the assignment of such Assigned Contract, constitutes an unenforceable anti-assignment provision that is void and of no force and effect in connection with the Transactions.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Assigned Contracts, and such Assigned Contracts shall remain in full force and effect for the benefit of the Purchaser.

23.    Upon the Closing, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts, and the Debtor and its estate shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contracts occurring after such assignment; provided, however, nothing herein shall prohibit the counterparties to such Assigned Contracts from accessing the Debtor's available insurance with respect to pre-assignment indemnity obligations arising under such Assigned Contracts.  The Debtor shall pay undisputed Cure Amounts within fifteen (15) days of Closing. There shall be no assignment fees, increases, or any other fees charged to the Purchaser or the Debtor as a result of the assumption and assignment of the Assigned Contracts.

24.    Other than the Assigned Contracts, and except as agreed as reflected on the record of the Sale Hearing, the Purchaser assumed none of the Debtor's other contracts or leases and shall have no liability whatsoever thereunder.

25.    Nothing in the Motion or this Order shall be deemed or construed as a waiver of any claims or causes of action that the Debtor or the Purchaser have or may have against a non-Debtor counterparty to any Assigned Contract, whether or not such claims arise under, are related to the assumption of or are independent of the Assigned Contracts.

21

26.     The requirements set forth in Bankruptcy Rules 6003(b), 6004 and 6006 and Local Bankruptcy Rule 9075-1 have been satisfied or otherwise deemed waived.

27.     The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to give any notice permitted by the APA or to enforce any of its remedies under the APA or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

28.     The provisions of this Order and APA are non-severable and mutually dependent.

29.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

30.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transactions.  This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect the Purchaser and its assets, including the Acquired Assets, against any Claims and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to Sections 105(a), 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the Assigned Contracts to the Purchaser.

31.     As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d) or any similar rule that would delay the effectiveness of this Order.  Time is of the essence in closing the sale and the Debtor and the

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

1    Purchaser intend to close the sale and consummate the Transactions as soon as possible, subject to

2    the closing requirements set forth in the APA.  For the avoidance of doubt, the parties are authorized

3    to proceed to close immediately after the entry of this Order in accordance with the terms and

4    conditions set forth in the APA, before this Order becomes a final and non-appealable order,

5    provided there is not then existing any order enjoining such closing from occurring.  As reflected on

6    the record of the Sale Hearing and subject to the Debtor's satisfaction of the conditions of

7    termination set forth in Section 11.1 of the APA, the Debtor may terminate the transaction

8    contemplated by the APA with the Purchaser on the grounds the Closing has not timely occurred if

9    the Closing has not occurred by December 31, 2015; provided, however, that the Purchaser is

10    entitled to delay (in its sole and absolution discretion) the Closing until not later than January 6,

11    2016 upon Purchaser's payment of those certain incremental costs resulting from such delay as

12    reflected on the record of the Sale Hearing.  Therefore any party objecting to this Order must

13    exercise due diligence in filing an appeal and pursuing a stay of the closing of the transactions or risk

14    their appeal being foreclosed as moot.

15          32.    As set forth on the record, Section 4.18 of the APA shall be amended to provide that

16    the Inventories Cost of the rental equipment purchased by the Purchaser is not less than Twelve

17    Million Six Hundred Thousand Dollars ($12,600,000); provided, however, that any reduction in

18    Inventories Cost resulting from fraud, shrinkage, or otherwise, shall be included in the Purchaser's

19    True Up Calculation to determine the Purchase Price Adjustments under Section 3.2 of the APA.  To

20    the extent that any section of this Paragraph 32 differs from what was set forth on this Court's record,

21    the terms set forth on the Court's record of the Sale Hearing shall control.

22          33.    As set forth on the record, Section 6.4 of the APA shall be amended to provide that

23    the Purchaser shall offer employment to no fewer than 5 Business Employees who are not subject to

24    Employment Agreements.  Additionally, Section 6.4 of the APA shall provide that the Purchaser

25    shall pay the Debtor two weeks of severance plus accrued vacation on account of each Business

26    Employee that is not a Transferred Employee; provided, however, that the Purchaser shall not be

27    obligated to make such payments to the Debtor on account of Business Employees who are offered

28

23

1 employment by the Purchaser and reject such employment offer.  To the extent that any section of

2 this Paragraph 33 differs from what was set forth on this Court's record, the terms set forth on the

3 Court's record of the Sale Hearing shall control.

4        34.     This Order and the APA shall be binding in all respects upon all creditors of (whether

5 known or unknown), and holders of equity interests in, the Debtor, any holders of Claims in, against

6 or on all or any portion of the Acquired Assets, all non-Debtor counterparties to the Assigned

7 Contracts, all successors and assigns of the Purchaser, the Debtor and their affiliates and subsidiaries

8 and any subsequent trustee appointed in the Chapter 11 Case or upon a conversion to chapter 7 under

9 the Bankruptcy Code, and shall not be subject to rejection.  Nothing contained in any chapter 11 plan

10 confirmed in the Chapter 11 Case, any order confirming any such chapter 11 plan or any order

11 approving wind-down or dismissal of the Chapter 11 Case or any subsequent chapter 7 case shall

12 conflict with or derogate from the provisions of the APA or this Order, and to the extent of any

13 conflict or derogation between this Order or the APA and such future plan or order, the terms of this

14 Order and the APA shall control and remain in full force and effect.

15        35.     Upon Closing, all sale proceeds, less any closing disbursements (the Cure Amount to

16 the Landlord and the Breakup Fee and the Reimbursement Expense to the Stalking Horse) shall be

17 deposited into the Debtor's debtor-in-possession bank account.

18        36.     To the extent of any inconsistency between the provisions of the APA and any

19 documents to be executed in connection therewith, and this Order, this Order shall govern and

20 control.

21        **IT IS SO ORDERED.**

22                          # # #

23

24 Date: December 24, 2015

25                          Martin R Barash
                         United States Bankruptcy Judge

26

27

28

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F

## Exhibit 1

Each of the following parties, through its counsel, hereby acknowledges on December 23, 2015 its agreement as to the form of the Order to which this Exhibit is attached:

**Full Throttle Films LLC D/B/A Video Equipment Rental:**

By: _____

(Print name): _Ronn S Davids_

**Production Resource Group, L.L.C.:**

By: _____

(Print name): _____

**Atomic Lighting LLC:**

By: _____

(Print name): _____

**A&M Pierce Property, LLC:**

By: _____

(Print name): _____

**Office of the United States Trustee:**

By: _____

(Print name): _____

25

1467775

## Exhibit 1

Each of the following parties, through its counsel, hereby acknowledges its agreement as to the form of the Order to which this Exhibit is attached:


**Full Throttle Films LLC D/B/A Video Equipment Rental:**


By: _____

(Print name): _____


**Production Resource Group, L.L.C.:**


By: _____

(Print name): Lewis R. Landau, Attorney of Record


**Atomic Lighting LLC:**


By: _____

(Print name): _____


**A&M Pierce Property, LLC:**


By: _____

(Print name): _____


**Office of the United States Trustee:**


By: _____

(Print name): _____

1

## Exhibit 1

2

Each of the following parties, through its counsel, hereby acknowledges on December 23, 2015 its
agreement as to the form of the Order to which this Exhibit is attached:

3

4

**Full Throttle Films LLC D/B/A Video Equipment Rental:**

5

6

7

By: _____

8

(Print name): _____

9

**Production Resource Group, L.L.C.:**

10

11

12

By: _____

13

(Print name): _____

14

**Atomic Lighting LLC:**

15

16

By: _____

17

(Print name): _Fahim Farivar (local Counsel for Atomic_
_Baker Hostetler LLP Lighting LLC)_

18

19

**A&M Pierce Property, LLC:**

20

21

By: _____

22

(Print name): _____

23

24

**Office of the United States Trustee:**

25

26

By: _____

27

(Print name): _____

28

25

## Exhibit 1

Each of the following parties, through its counsel, hereby acknowledges on December 23, 2015 its agreement as to the form of the Order to which this Exhibit is attached:

**Full Throttle Films LLC D/B/A Video Equipment Rental**:

By: _____

(Print name): _____

**Production Resource Group, L.L.C.:**

By: _____

(Print name): _____

**Atomic Lighting LLC**:

By: _____

(Print name): _____

**A&M Pierce Property, LLC**:

By: _Luisa Joffe_____

(Print name): _Luisa Joffe, counsel for A&M Pierce Property LLC_

**Office of the United States Trustee**:

By: _____

(Print name): _____

25

167775

## Exhibit 1

Each of the following parties, through its counsel, hereby acknowledges on December 23, 2015 its agreement as to the form of the Order to which this Exhibit is attached:

**Full Throttle Films LLC D/B/A Video Equipment Rental:**

By: _____

(Print name): _____

**Production Resource Group, L.L.C.:**

By: _____

(Print name): _____

**Atomic Lighting LLC:**

By: _____

(Print name): _____

**A&M Pierce Property, LLC:**

By: _____

(Print name): _____

**Office of the United States Trustee:**

By: _____

(Print name): _Jennifer L Braun_

25

# **Exhibit 1**

Each of the following parties, through its counsel, hereby acknowledges on December 23, 2015 its agreement as to the form of the Order to which this Exhibit is attached:

**Full Throttle Films LLC D/B/A Video Equipment Rental**:

By: _____

(Print name): _____

**Production Resource Group, L.L.C.:**

By: _____

(Print name): _____

**Atomic Lighting LLC**:

By: _____

(Print name): _____

**A&M Pierce Property, LLC**:

By: _____

(Print name): _____

**Office of the United States Trustee**:

By: _____

(Print name): _____

ORDER#109980#C1FBD93E-06DB-4ECE-906D-1B805118357F